**LAURIE LYNN FRANCIS, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2007-093

Supreme Court of the Virgin Islands

November 19, 2009

LEONARD BERNARD FRANCIS, JR., ESQ., St. Thomas, USVI, *Attorney for Appellant*.

MATTHEW PHELAN, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee*.

CABRET, *Associate Justice*; SWAN, *Associate Justice*; and DUNSTON, *Designated Justice*.[1] SWAN, *Associate Justice, dissenting*.

---

[1] Chief Justice Rhys S. Hodge is recused from this matter. The Honorable Michael C. Dunston has been designated in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

## OPINION OF THE COURT

(November 19, 2009)

DUNSTON, J. Appellant Laurie Lynn Francis (hereafter "Appellant") appeals her convictions for eight counts of embezzlement and one count of conspiracy, alleging that insufficient evidence exists to sustain her convictions. For the following reasons, we will affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From January, 2000, to March, 2003, the Virgin Islands Department of Human Services (hereafter "DHS") received federal funds to run a Child Care Development Program. This program was run by Delreise Hamilton (hereafter "Hamilton"), who was employed by DHS as a Child Care Specialist within the Office of Child Care and Regulatory Services. The Child Care Development Program issued vouchers — through Hamilton — to childcare providers who would submit those vouchers to Lutheran Social Services (hereafter "LSS"). LSS handled DHS's accounting and would issue payment either to the childcare providers directly or to DHS, where Hamilton would contact the provider.

Hamilton, along with her roommate Delma Francis (hereafter "Delma") — Appellant's sister — submitted fraudulent vouchers to LSS in the names of third parties who had voluntarily submitted their personal information to Hamilton and Delma. Once checks were issued in the names of these third parties, Hamilton and Delma would cash the checks and collect the proceeds. During this period, Appellant informed Delma that she was in desperate need of money. Delma informed Appellant of her activities, and told Appellant that she would need to get a third party's personal information in order to also receive payments from LSS. Shortly thereafter, Appellant contacted Alvera Maduro (hereafter "Maduro"), a resident of Tortola whom Appellant had known for twenty years, to receive her personal information, which Appellant forwarded to Hamilton for input into the voucher system. Whenever a check from LSS arrived, Appellant would meet Maduro, have Maduro endorse and cash the check, and provide the money to Appellant. The checks issued in Maduro's name listed a mailing address in St. Thomas, which was a post office box registered to Appellant. When Maduro asked Appellant if this arrangement was legal, Appellant informed Maduro that she needed to use

384

Maduro's name in order to receive funds for utilities and other expenses for low income households.

After a whistleblower informed the Department of Justice of Hamilton's activities, Appellant was interviewed but initially not arrested. Hamilton, Delma, and Appellant were subsequently arrested, with Appellant being advised of her rights before the Superior Court on October 25, 2006, and arraigned on November 2, 2006. Hamilton and Delma both entered into plea agreements in April, 2007, and agreed to cooperate with the Department of Justice's investigation. The second amended information the People of the Virgin Islands (hereafter "People") filed against Appellant charged her with eight counts of aiding and abetting embezzlement or falsification of public accounts in violation of title 14, section 1662(7), 11(a) of the Virgin Islands Code, conspiracy in violation of title 14, section 551(1), and aiding and abetting the filing or recording forged instruments in violation of title 14, sections 795, 11(a).

Appellant was tried on June 13 and 14, 2007. The trial court granted Appellant's motion for acquittal as to the tenth count of filing or recording forged instruments. However, the jury found Appellant guilty of the remaining nine counts. On July 6, 2007, the trial court sentenced Appellant to three years of incarceration — eighteen months suspended with respect to the eight embezzlement counts — with all sentences to run concurrently. Appellant was also fined and ordered to pay restitution and court costs. Appellant filed her notice of appeal on July 16, 2007.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). Because Appellant was sentenced on July 6, 2007 and filed her notice of appeal on July 16, 2007, the notice of appeal was timely filed. *See* V.I.S. CT. R. 5(b)(1).

"When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *Latalladi v. People*, 51 V.I. 137,

145 (V.I. 2009) (quoting *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990)). "The appellate court 'must affirm the convictions if a rational trier of fact could have found the defendants guilty beyond a reasonable doubt and the convictions are supported by substantial evidence.'" *Id.* (quoting *Gonzalez*, 918 F.2d at 1132). However, "[t]his evidence 'does not need to be inconsistent with every conclusion save that of guilt' in order to sustain the verdict." *Id.* (quoting *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957)). Thus, "[a]n appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears 'a very heavy burden.'" *Id.* (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)).

### B. The Evidence Was Sufficient to Convict Appellant on All Counts of Embezzlement

 Appellant first challenges the sufficiency of the evidence used to convict her as a principal on eight counts of embezzlement as an aider and abettor. "To be convicted as a principal for aiding and abetting in the commission of a crime, the government must prove two elements: (1) that the substantive crime was committed, and (2) that the defendant knew of the crime and attempted to facilitate it." *Gov't of the V.I. v. Peters*, 121 F. Supp. 2d 825, 828 (D.V.I. App. Div. 1998). This requires that

> an individual have a "purposive attitude" to see the venture succeed and must participate in the criminal endeavor at least to the point of encouraging the perpetrator and "participate in it as something that he wishes to bring about . . . ." In determining whether a defendant has associated himself with and participated in a criminal undertaking, care must be taken that speculation is not permitted to substitute for evidence.

*Gov't of the V.I. v. Navarro*, 11 V.I. 542, 549, 513 F.2d 11, 14-15 (3d Cir. 1975) (citations omitted). "Liability as an aider and abettor may arise from affirmative participation such as words or actions which encouraged, induced or helped the perpetration of the criminal enterprise." *Peters*, 121 F. Supp. 2d at 828-29.

 On appeal, Appellant does not dispute that Hamilton, et al., committed the substantive offenses of embezzlement, but only argues that the People did not prove beyond a reasonable doubt that Appellant intended to facilitate or otherwise induce these crimes because "[t]here is

386

no evidence that [Appellant] knew anything of the matters instigated by Ms. Hamilton. . . ." (Appellant's Br. at 8.) The record, however, contains sufficient evidence that, when viewed in the light most favorable to the People, would establish that Appellant knew of the embezzlement and attempted to facilitate it. At trial, Hamilton testified that she falsified vouchers and paperwork by "prepar[ing] vouchers for children for a particular provider . . . who did not actually watch the children" in order to "obtain money." (App. at 101-03; Trial Tr., vol. 1, 113-15, June 13, 2007.) Hamilton further testified that she obtained most of the names of these fictitious providers from Delma. (App. at 101-02; Trial Tr., vol. 1, 113-14, June 13, 2007.) Hamilton then stated that Delma told her to prepare vouchers and documents in Maduro's name, and that once the checks were issued "[t]hey were supposed to be given to [Appellant], and then [Appellant] would give them to [Maduro.]" (App. at 111-12, Trial Tr., vol. 1, 123-24, June 13, 2007.) Hamilton further elaborated that the purpose of preparing these fraudulent vouchers and documents in Maduro's name was "to . . . get [Appellant] money." (App. at 113-15, Trial Tr. vol. 1, 125-27, June 13, 2007.) Hamilton further stated on direct examination that Appellant had received the fraudulent checks from Delma, that it was Appellant's role to then give the checks to Maduro, and that Maduro would then endorse and cash the checks and "[g]ive the money to [Appellant.]" (App. at 117-118, Trial Tr. vol. 1, 129-30, June 13, 2007.) Hamilton concluded by stating that the address — P.O. Box 502681 — and phone number — 715-0152 — listed on Maduro's fraudulent provider agreement, which was introduced into evidence as People's Exhibit 8, both belonged to the Appellant. (App. at 135, Trial Tr. vol. 1, 147, June 13, 2007.) The People also entered the fraudulent vouchers in Maduro's name into evidence, as well as the four checks made out to Maduro, with Hamilton testifying that the proceeds of those checks were expected to go to Appellant. (App. at 139-152, Trail Tr. vol. 1, 151-164, June 13, 2007.)

Delma also testified at trial. During direct examination, Delma stated that the plan was to give the proceeds of the checks entered in Maduro's name to Appellant because she was having financial problems. (App. at 242-43, Trial Tr. vol. 1, 222-223, June 13, 2007.) Delma further testified that Appellant provided her with Maduro's name, and that Delma provided those checks to Appellant once she obtained possession of them. (App. at 245, Trial Tr. vol. 1, 225, June 13, 2007.) On re-direct

examination, Delma also stated that Appellant never objected to taking the checks made out to Maduro. (App. at 247-48, Trial Tr. vol. 1, 227-28, June 13, 2007.)

The People also called Maduro to testify at Appellant's trial. Maduro stated that the Appellant had asked her if she could use her name to get the checks at issue, and that "she explained it's like some kind of fund that helps mothers who are not making enough money. . . ." and that she said "it's not anything illegal." (App. at 256, Trial Tr. vol. 1, 238, June 13, 2007.) Maduro further testified that Appellant called her when the checks arrived in her P.O. Box, at which point she would travel to St. Thomas in order to cash the checks for Appellant, who would drive her to the bank. (App. at 257-71, Trial Tr. vol. 1, 239-53, June 13, 2007.) Maduro also stated that after the Department of Justice investigation started and Hamilton was terminated from her position, Appellant called her to inform her that the checks would no longer arrive and to advise her not to speak to the Department of Justice's investigators. (App. at 278-281, Trial Tr. vol. 1, 260-63, June 13, 2007.)

Although Appellant's testimony conflicted with the testimony of these other witnesses,[2] this evidence, when viewed in the light most favorable to the People, clearly proved beyond a reasonable doubt that Appellant knew that the crime of embezzlement had been taking place and had taken steps to facilitate the crime. Accordingly, the evidence was sufficient to convict Appellant as an aider and abettor to embezzlement.

### C. The Evidence Was Sufficient to Convict Appellant of Conspiracy

■■ Appellant also challenges the sufficiency of the evidence used to convict her of conspiracy under title 14, section 551(1) of the Virgin Islands Code. Pursuant to section 552, the essential elements for a section 551 conspiracy are an agreement and an overt act done in furtherance of the conspiracy. *See Bigby v. Gov't of the V.I.*, 125 F. Supp. 2d 709, 712 (D.V.I. App. Div. 2000) (citing 14 V.I.C. §§ 551-52). "The elements of a conspiracy may be proven entirely by circumstantial evidence. . . ." *United States v. Mark*, No. 2005-76, 2007 U.S. Dist. LEXIS 59190, *5 (D.V.I. 2007) (citing *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir.

---

[2] *See* App. at 336-49, Trial Tr. vol. 2, 62-75, June 14, 2007.

2006)). This circumstantial evidence, however, must be "sufficient to create a 'reasonable and logical inference[] that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding.' " *Id.* (quoting *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986)).

■ Appellant primarily argues that there is insufficient evidence that she knowingly participated in a conspiracy with Hamilton and Delma.[3] However, as discussed in the prior section, the People called Hamilton, Delma, and Maduro as witnesses at trial, all of whom testified to Appellant's actions and her role in the conspiracy. Notably, Delma testified that she had received Maduro's name from Appellant and that she gave Appellant the checks bearing Maduro's name once they were issued. Delma and Hamilton had also testified that they did not know Maduro, with Hamilton stating that Appellant had provided her with Maduro's personal information and Maduro confirming that she had given this information to Appellant. Likewise, Maduro testified that she received a phone call from Appellant every time a check arrived and that Appellant would drive her to the bank in order for her to cash the checks and provide Appellant with the proceeds. Furthermore, Appellant confirmed that the P.O. Box listed on Maduro's voucher was her own and admitted that she had taken Maduro to the bank to cash checks. (App. at 336-51, Trial Tr. vol. 2, 62-77, June 14, 2007.) This evidence, when read in the light most favorable to the People, is clearly sufficient to establish both an overt act and that Appellant had entered into an agreement or other understanding with Hamilton, Delma, and Maduro. Accordingly, the evidence is sufficient to sustain Appellant's conviction for conspiracy to commit embezzlement.

---

[3] Appellant, though not expressly making the argument in her brief, implies that multiple conspiracies existed and that the People never proved that she was a member of the same conspiracy involving Twana Hodge, Kendra Vickers, and Sandra Glasco. (Appellant's Br. at 13.) However, nothing in the record indicates that the People had charged Appellant as a participant to this larger scheme. Rather, the nature of the witnesses and their testimony indicates that the People only charged Appellant as a member of a single conspiracy, with Hamilton, Delma, and Maduro as her co-conspirators, with the goal of embezzling money from the government for Appellant's use.

## D. The Trial Court's Jury Instructions Do Not Constitute Plain Error

■ Although Appellant raised the sufficiency of the evidence as the sole issue on appeal, the dissent argues that this Court should *sua sponte* overturn Appellant's convictions on counts five through eight of the information on the basis that the trial court purportedly committed plain error in issuing jury instructions that omitted a required element of the embezzlement offense. Specifically, the trial court instructed the jury that the People had to prove, beyond a reasonable doubt, that Appellant aided and abetted Hamilton in "fraudulently generat[ing] a check payable to Alvera Maduro for child care services not rendered," (App. at 441, Trial Tr. vol. 2, 249, June 14, 2007), even though the statute codifying the substantive offense of embezzlement under which Appellant was charged as an aider and abettor does not mention fraud, but requires that the public monies be used "for any purpose not authorized by law." 14 V.I.C. § 1662(3). This Court emphasizes that trial judges should carefully craft jury instructions that track the statutory language of the charged offense rather than rely on the language employed by the prosecution in the charging document. However, we hold that under the facts of this case the embezzlement instruction given by the trial court do not rise to the level of plain error but, at worst, constituted harmless error.

■ Pursuant to Federal Rule of Criminal Procedure 30(d),[4] the failure to object to a jury instruction before the trial judge "precludes appellate review, except as permitted under Rule 52(b)." Under Rule 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." FED R. CRIM. P. 52(b). Thus, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the

---

[4] The Federal Rules of Criminal Procedure apply to proceedings in the Superior Court of the Virgin Islands to the extent that they are not inconsistent with either the procedural rules promulgated under the Virgin Islands Code or the Rules of the Superior Court. *See Phillips v. People*, 51 V.I. 258, 273 (V.I. 2009); SUPER CT. R. 7.

fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467 (citations and punctuation omitted).[5]

■■ The dissent correctly acknowledges that, "although it is not a *per se* rule, the omission of an essential element of an offense in a jury instruction *ordinarily* constitutes plain error." (Dissenting Op. at 12 (quoting *United States v. Dobson,* 419 F.3d 231, 240 (3d Cir. 2005).) However, the Supreme Court of the United States — which was confronted with a scenario similar to the instant matter in *Neder v. United States,* 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) — has expressly recognized an exception to this general principle that is applicable to this case. In *Neder,* the trial court "instructed the jury that, to convict on the tax offenses, it 'need not consider' the materiality of any false statements 'even though that language is used in the indictment' " because "[t]he question of materiality, the court instructed, 'is not a question for the jury to decide.' " *Id.* at 6. Unlike Appellant in this case, however, Neder objected to this instruction. *Id.* On appeal, the United States Court of Appeals for the Eleventh Circuit held that the trial court erred in its instructions because materiality was an element of the charged offenses, but nevertheless affirmed the conviction because " 'materiality was not in dispute' and thus the error 'did not contribute to the verdict obtained.' " *Id.* at 6-7. The Supreme Court affirmed:

> Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Our decision in *Johnson v. United States, supra,* is instructive. *Johnson* was a perjury prosecution in which, as here, the element of materiality was decided by the judge rather than submitted to the jury. The defendant failed to object at trial, and we thus reviewed her claim for plain error. Although reserving the question whether the omission of an element ipso facto affects substantial rights, we concluded that the error did not warrant correction in light of the overwhelming and uncontroverted

---

[5] For purposes of this analysis we assume, without deciding, that Appellant did not intentionally waive her objection to the trial court's jury instructions. *See Gov't of the V.I. v. Rosa,* 399 F.3d 283, 290-91 (3d Cir. 2005) (distinguishing between waived and forfeited errors); *see also Latalladi,* at 144 (holding that errors invited by the appellant cannot form the basis for reversal).

evidence supporting materiality. Based on this evidence, we explained, the error did not seriously affect the fairness, integrity or public reputation of judicial proceedings.

That conclusion cuts against the argument that the omission of an element will always render a trial unfair. In fact, as this case shows, quite the opposite is true: Neder was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel; a fairly selected, impartial jury was instructed to consider all of the evidence and argument in respect to Neder's defense against the tax charges. Of course, the court erroneously failed to charge the jury on the element of materiality, but that error did not render Neder's trial "fundamentally unfair," as that term is used in our cases.

*Id.* at 8-9 (internal citations, punctuation marks, and quotations omitted). The Court then held that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Id.* at 17. Applying this standard, Neder was not entitled to have his convictions overturned because "the record contain[ed] no evidence that could rationally lead to a contrary finding with respect to the omitted element" and thus "the District Court's failure to submit the element of materiality to the jury with respect to the tax charges was harmless error." *Id.* at 19-20.[6] *See also Gov't of the V.I. v. Venzen,* 7 V.I. 488, 490, 424 F.2d 521,

---

[6] The dissent cites *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and *United States v. Gaudin,* 515 U.S. 506, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995) for the proposition that Appellant is entitled to a jury determination that she is guilty of every element of the crime charged beyond a reasonable doubt, as well as *Waddington v. Sarausad,* ___ U.S. ___, 129 S. Ct. 823, 831, 172 L. Ed. 2d 532 (2009) for the proposition that a jury instruction that relieves the government of its burden of proving every element of the crime beyond a reasonable doubt constitutes constitutional error. However, these cases are easily distinguished from both *Neder* and the instant case in that the *Apprendi, Gaudin,* and *Waddington* defendants disputed the elements that were not properly brought before the jury whereas Neder and Appellant did not contest the omitted elements and conceded them at trial. *See United States v. Harrison,* 204 F.3d 236, 241-43, 340 U.S. App. D.C. 198 (D.C. Cir. 2000) (explaining that defendant's stipulation to a necessary element of the crime precludes defendant from challenging the sufficiency of the evidence on appeal based on the government's failure to introduce evidence proving the stipulated element) (collecting cases).

523 (3d Cir. 1970) (holding that trial judge's failure to instruct jury, in forgery prosecution, on required element that checks actually be forged did not constitute plain error because jury could not have convicted defendant based on the instructed elements of forgery without also concluding that checks were forged); *cf. United States v. Velez-Vasquez*, 116 F.3d 58, 62 (2d Cir. 1997), *cert. den.*, 522 U.S. 926, 118 S. Ct. 324, 139 L. Ed. 2d 251 (1997) ("At least absent objection, there is no *per se* rule requiring reversal for failure to include the presumption [of innocence] in the final instructions to the jury without consideration of how that failure affected the trial.").

 Here, the trial court's jury instruction, even if erroneous, did not impact Appellant's substantial rights. Significantly, as in *Neder*, Appellant never argued at trial or on appeal that Hamilton — who had pled guilty to embezzlement — did not commit the substantive offense and, accordingly, never disputed that Hamilton's actions were not authorized by law. Rather, Appellant's trial strategy consisted of conceding that Hamilton committed embezzlement but arguing that Appellant did not take any actions to facilitate those crimes. Notably, Hamilton had testified at trial that she falsified vouchers and paperwork by "prepar[ing] vouchers for children for a particular provider . . . who did not actually watch the children" in order to "obtain money." (App. at 101-03; Trial Tr., vol. 1, 113-15, June 13, 2007.)[7] Moreover, unlike *Neder* and *United States v. Stansfield*, 101 F.3d 909 (3d Cir. 1996), the trial court did not completely omit an element from its jury instructions, but replaced the statute's language with a phrase that held the People to an even higher standard than required by the statute. We note that although not all acts that are "not authorized by law" rise to the level of fraud, a fraud, by its very nature, is not authorized by law. *See* 14 V.I.C. § 831-52. Consequently, the trial court's error, if any, benefited the Appellant by effectively instructing the jury that the People were required to prove beyond a reasonable doubt the higher standard of "fraud" rather than the lower standard of "not authorized by law." *See People v. Pierce*, 56 Ill. 2d 361, 308 N.E.2d 577, 579 (1974) (holding that an error that favors the defendant is "a species of harmless error . . . and of which he cannot complain."). Because the "unauthorized by law" element was

---

[7] In fact, during closing arguments Appellant's counsel characterized Hamilton's testimony as an admission that she "created a scheme in which she . . . had done vouchers fraudulently." (App. at 394; Trial Tr., vol. 2, 202, June 13, 2007).

"uncontested and supported by overwhelming evidence," and since any arguable error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings because the trial court's erroneous jury instruction ultimately favored the Appellant, the trial court's instruction does not constitute plain error and cannot form the basis for reversing Appellant's convictions.[8]

## III. CONCLUSION

Based on the record before this Court, the evidence introduced at Appellant's trial, when read in the light most favorable to the People, was sufficient to convict Appellant of aiding and abetting embezzlement and for conspiracy to commit embezzlement. Furthermore, the trial court's jury instructions with respect to counts five through eight, even if erroneous, do not rise to the level of plain error. Consequently, this Court shall not disturb Appellant's convictions.

## DISSENTING OPINION

SWAN, J., *dissenting*. Laurie Lynn Francis ("Appellant") appealed the September 13, 2007 Judgment and Commitment of the Superior Court

---

[8] The dissent, citing *United States v. Alferahin*, 433 F.3d 1148 (9th Cir. 2006) and *United States v. Baldwin*, 987 F.2d 1432 (9th Cir. 1993), states that "[i]n cases where courts have found that the omission of an element of the crime from jury instructions did not affect the defendant's substantial rights, the courts found that there was a functional equivalent of the elements of that crime in other charges against the defendant in the same trial." (Dissenting Op. at 15.) However, other courts, such as the United States Supreme Court in *Neder*, have affirmed such omissions even under the less stringent harmless error standard when the omitted elements were not contested by the defendant at trial and were supported by overwhelming evidence. Furthermore, because a fraud is an action that is not authorized by law, the trial court's alternate wording, which resulted in requiring the jury to find that the People prove a more demanding element than required by the statute, effectively constituted a functional equivalent under *Alferahin* and *Baldwin*.

Likewise, the dissent correctly notes that the Third Circuit, in *United States v. Wilkinson*, 137 F.3d 214 (3d Cir. 1998), found no error where a trial court substitutes its own words for those of a statutory element of a crime. (Dissenting Op. at 17.) However, while the dissent characterizes the *Wilkinson* court's substituted element — "false declarations before a grand jury or court" — as "synonymous" with the element of the crime in the statute — "perjury generally" — the relationship between these terms is identical to the association between a fraud and an action unauthorized by law, in that a false declaration before a grand jury is a type of perjury just as a fraud is a type of action unauthorized by law. Consequently, the Third Circuit's decision in *Wilkinson* provides further support for a finding that the trial court's substitution of elements did not constitute a plain error.

convicting her of: Counts One through Four of the Second Amended Information[1] for aiding and abetting in the embezzlement or falsification of public accounts under title 14, sections 1662 (7) and 11(a) of the Virgin Islands Code; Counts Five through Eight of the Second Amended Information for aiding and abetting in the embezzlement or falsification of public accounts under title 14, sections 1662 (3) and 11(a) of the Virgin Islands Code; and Count Nine of the Second Amended Information for conspiracy to embezzle public monies from the Department of Human Services Child Care Development Program ("DHSCCDP), in violation of title 14, section 551 of the Virgin Islands Code. During the trial and upon Appellant's Motion for Judgment of Acquittal on Count Ten, which charged Appellant with aiding and abetting in filing or recording forged instruments in violation of title 14, sections 795 and 11(a) of the Virgin Islands Code, the trial court granted Appellant's Motion, acquitting her of Count Ten.

While I will affirm the convictions on Counts One through Four and Nine of the Second Amended Information, for the reasons explicated below, I would reverse the convictions on Counts Five through Eight, because in giving the final instructions to the jury, the trial court substituted an incorrect element of the crimes while simultaneously omitting from the same final instructions a correct element of the crimes in these counts.

Essentially, in giving the jury the final instructions on the elements of the crime in title 14, section 1662(3), the trial court actually substituted an element of the crime in title 14, section 1662(7), and omitted a correct element of the crime in section 1662(3), thereby committing plain error and violating Appellant's constitutional rights on Counts Five through Eight, which charge the crime in section 1662(3).

## I. FACTS AND PROCEDURAL HISTORY

Between January 2000 and March 2003, the Virgin Islands Department of Human Services ("DHS") received federal funds to operate its Child

---

[1] Although Appellee and the trial court make reference to the Second Amended Information, there exists a Third Amended Information in the trial court's file. However, both the Second Amended Information and the Third Amended Information have verbatim language in Counts Five, Six, Seven, and Eight. Also the Third Amended Information is not mentioned in the trial court's docket entries.

Care Development Program. This Program provided funds to low-income families to assist them with paying for childcare. Between January 2000 and March 2003, Delrise Hamilton ("Hamilton") was employed as a Child Care Specialist with the Office of Child Care and Regulatory Services at DHS, where she supervised the operations of the Child Care Development Program. The Office of Child Care and Regulatory Services ordinarily issued vouchers directly to Hamilton. In turn, Hamilton submitted those vouchers to Lutheran Social Services ("LSS"). LSS, which managed DHS's accounting division for the program, used the vouchers to issue payments to childcare providers. Payments went either directly to the childcare providers or to DHS.

Hamilton and her roommate, former Virgin Islands Police Officer Delma Francis ("Delma"), approached several of their friends and obtained their friends' personal information. The personal information were used to submit fraudulent vouchers to LSS. Upon receiving the fraudulent vouchers, LSS issued checks in the names of friends of Hamilton and Delma. Thereafter, Hamilton and Delma obtained the same checks that were payable to their friends and cashed them. They purportedly retained the proceeds from the LSS checks they cashed.

During the same period, Delma decided to assist her sister, Appellant, with her financial problems. Delma allegedly told Appellant about the details of the scam with DHS. Delma informed Appellant that she would need to obtain personal information from a third party to be used in having vouchers processed, pursuant to which Appellant would receive payments from LSS.

Accordingly, Appellant contacted her long-time friend, Alvera Maduro ("Maduro") of Tortola, British Virgin Islands. Because of a close relationship with Appellant for approximately twenty years, Maduro considered Appellant her sister. Maduro had previously provided financial assistance to Appellant. Appellant obtained Maduro's personal information which was subsequently entered into the voucher system. Every time a check was issued to Maduro, Delma would deliver the check to Appellant. Appellant would contact Maduro in Tortola. Thereafter, Maduro would embark the ferry boat to Saint Thomas, where she met Appellant. Appellant would drive Maduro to the bank. At the bank, Appellant waited in her car while Maduro entered the bank and cashed the checks from LSS. After Maduro cashed the checks, Maduro would give Appellant all the proceeds from the LSS checks.

Between November 2002 and March 2003, Maduro received four checks, made payable to her in the amount of one thousand, nine hundred twelve dollars ($1,912.00)[2], for the care of Loriel Weeks and Ariana Wattley. The mailing address listed on the checks was P.O. Box 502681, St. Thomas, Virgin Islands. This post office box was registered to Appellant. When Maduro repeatedly asked Appellant if this arrangement was legal, Appellant informed Maduro that it was legal and that Appellant needed to use Maduro's name in order to obtain funds under the control of Hamilton to pay Appellant's utilities and household expenses.

The Department of Justice initiated an investigation about the checks, during which Appellant was questioned but was not immediately arrested. Eventually, Hamilton and Delma were arrested. Pursuant to plea agreements in April 2007, both Hamilton and Delma pleaded guilty to two felony counts and agreed to cooperate with the investigation, including testifying in any future prosecution.

After a complete investigation, Appellant was charged in the Second Amended Information in Counts One through Four, with aiding and abetting in the embezzlement or falsification of public accounts, in violation of title 14, sections 1662(7) and 11(a) between November 22 and November 29, 2002 (Count One); between December 19 and December 23, 2002 (Count Two); between January 23 and January 27, 2003 (Count Three); and between February 25 and March 7, 2003 (Count Four). Additionally, Appellant was charged with Counts Five through Eight for aiding and abetting in the embezzlement or falsification of public accounts, in violation of title 14, sections 1662 (3) and 11 (a) between November 22 and November 29, 2002 (Count Five); between December 19 and December 23, 2002 (Count Six); between January 23 and January 27, 2003 (Count Seven); and between February 25 and March 7, 2003 (Count Eight). Appellant was also charged with Count Nine for conspiracy to embezzle public monies from the Department of Human Services Child Care Development Program ("DHSCCDP"), in violation of title 14, section 551 (1). Lastly, Appellant was charged in Count Ten for aiding and abetting with the filing or recording of forged instruments, in violation of title 14, sections 795 and 11 (a).

---

[2] It is not clear from the record whether $1,912.00 was the total amount of the four checks that were made payable to Maduro, or whether the four checks payable to Maduro were in the amount of $1,912.00 each.

After a jury trial, Appellant was convicted of all charges, except the charge in Count Ten. Appellant timely appealed her convictions to this Court.

## II. JURISDICTION AND STANDARD OF REVIEW

Title 4, section 32 (a) of the Virgin Islands Code vests in this Court ". . . jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court . . . ." On July 16, 2007, Appellant appealed her convictions. The trial court entered a September 13, 2007 Judgment and Commitment with a *Nunc Pro Tunc* date of July 6, 2007. Therefore, Appellant's appeal is timely.

My focus in this dissenting opinion is on a substitution of an incorrect element and the omission of a correct element of the crimes in Counts Five through Eight of the Second Amended Information, all of which the trial court imparted to the jury in the final instructions. Therefore, I will review the trial court's erroneous final instructions to the jury for plain error, because Appellant failed to object to the erroneous jury instructions. *United States v. Weatherly*, 525 F.3d 265, 270 (3d Cir. 2008).

## III. ISSUE[3]

Whether in reciting the final instructions to the jury, the trial court failed to instruct the jurors on the correct elements of the crimes in Counts Five through Eight of the Second Amended Information, which crimes are aiding and abetting in the embezzlement or falsification of public accounts, in violation of title 14, sections 1662(3) and 11(a) of the Virgin Islands Code.

---

[3] In Appellant's brief, Appellant primarily argues that there was insufficient evidence to convict Appellant of aiding and abetting and conspiracy. However, Appellant's brief poses the following questions as his issues:

 1.) Whether as a matter of law, the conspiracy and aiding and abetting charges leveled against the defendant, at her trial, were evidentially sufficient to warrant a conviction?

 2.) Whether the People's rebuttal evidence was warranted, under the circumstances of this case? If not, did the introduction of such evidence, at trial, unduly prejudice the defendant's case and result in harmful error?

(Appellant's Br. at 4.)

## IV. DISCUSSION

I would reverse the convictions on Counts Five through Eight of the Second Amended Information, because after an exacting scrutiny of the elements of the crimes in these counts, in conjunction with the pertinent statutory language of the same crimes, I find that there was a collective error in the final instructions to the jury for these counts. Whether because of inadvertence or oversight, the trial judge included in the final instructions to the jury an incorrect element of the crimes in Counts Five through Eight and simultaneously omitted a correct element of the same crimes from the final instructions. Consequently, when the jury found Appellant guilty of Counts Five through Eight of the Second Amended Information, the jury did not consider one of the intrinsic elements of these four crimes charged under section 1662(3) of aiding and abetting in the embezzlement or falsification of public accounts. The omission of the correct element undoubtedly contributed to guilty verdicts on Counts Five through Eight. Therefore, I commence the discussion by comparing the discrepancies between the statutory language of section 1662(3), in the Second Amended Information, with the language of the final instructions to the jury on the elements of the same crimes in section 1662(3). After the comparison, I conclude that the trial court incorrectly instructed the jury on the charges against Appellant for aiding and abetting Hamilton in the embezzlement or falsification of public accounts, pursuant to section 1662(3).

### A. The final instructions to the jury for Counts Five through Eight are incongruous with statutory language of title 14, section 1662(3).

First, I compare the language of the information in Counts Five through Eight with the language in title 14, sections 1662(3) and 11(a) of the Virgin Islands Code. Second, I compare the trial judge's final instructions to the jury on the elements of the crimes in Counts Five through Eight with the language in sections 1662(3) and 11(a). After both comparisons, I conclude that there is a discernable difference between the elements of the crimes in Counts Five through Eight that the trial court gave to the jury in the final instructions and the statutory elements of the same crimes in Counts Five through Eight of the Second Amended Information. In the Second Amended Information, Counts Five through

399

Eight employ the language of section 1662(3), which is the crime charged in those counts, and which must also be read in conjunction with title 14, section 11(a), the aiding and abetting statute. After reviewing the statutory language and elements of the crime in section 1662(3), and reviewing the final instructions to the jury, the unavoidable conclusion is that in its final instructions to the jury, the trial court failed to inform the jury of the pertinent language in section 1662(3) that comprises the elements of the crimes in Counts Five through Eight of the Second Amended Information.

The following comparison between the language of section 1662(3) in the Second Amended Information and the language in the final instructions to the jury on the same crimes clearly demonstrates the differences between section 1662(3) and the final instructions to the jury. First, section 1662(3) expressly states the following:

> [w]hoever, being a public officer or person charged with the receipts, safekeeping, transfer or disbursement of public monies . . . loans the same, or any portion thereof, or makes a profit out of, *or uses the same for any purpose not authorized by law* . . . shall be fined not more than ten thousand ($10,000) dollars or imprisoned not more than ten (10) years or both, and shall be disqualified from holding any public office.

(Emphasis supplied). Second, in applying section 1662(3), Appellee charges in Counts Five through Eight of the Second Amended Information that:

> [Appellant], did aid and abet . . . Hamilton who was a public officer charged with the receipts, safekeeping, transfer or disbursement of public moneys, and who used the same for a purpose not authorized by law while employed as a Child Care Specialist with the Department of Human Services, by *fraudulently generating a check payable to* . . . Alvera Maduro for the payment of child care services that were not rendered, in violation of **14 V.I.C. 1662 (3) EMBEZZLEMENT OR FALSIFICATION OF PUBLIC ACCOUNTS; T14 V.I.C. 11 (a) PRINCIPALS.**[4]

(Second Am. Information at 3-4.) (Emphasis supplied).

---

[4] Although the charges for Counts Five through Eight are identical in the Second Amended Information, each count charges a different date for the time period Appellant violated the statute.

In the final instructions, the trial court read to the jury section 1662(3) and Counts Five through Eight of the Second Amended Information. However, in one act, the trial court erroneously did two things. First, the trial court included in its final instructions, as an element of the crime, superfluous language that Appellee had included in Counts Five through Eight of the Second Amended Information. Second, the trial court simultaneously omitted a pivotal element of the crimes in Counts Five through Eight from the final instructions to the jury. The superfluous language in Counts Five through Eight is "fraudulently generating a check." (Am. Information at 3-4.) The word "fraudulently" or the language "fraudulently generating a check" is not in the statutory language of section 1662(3), the crime charged. However, the word, "fraudulently" is in the language of section 1662(7)[5], a crime not charged in Counts Five through Eight in the Second Amended Information. Importantly, the crimes involving sections 1662(7) are charged in Counts One through Four of the Second Amended Information. Those crimes in Counts One through Four involve the fraudulent commission of an act.

The salient language, which was omitted from the final instructions to the jury for Counts Five through Eight is ". . . uses the same for any purpose not authorized by law." (*See* J.A. at A-441.) The Appellee's inclusion of the superfluous language, "fraudulently generating a check," in the crimes charged in Counts Five through Eight may have misled the trial court. First, the trial court instructed the jury that the elements for Counts Five through Eight are the same except that the first element for each count has a different date. (*Id.*) In particular, the jury was provided the following final instructions for all four counts, charging Appellant with violating section 1662(3) as follows:

> So in order to prove that [Appellant] is guilty . . . [Appellee] must prove each of the following elements beyond a reasonable doubt . . . (2) in St. Thomas, Virgin Islands, (3) Delrise Anola Hamilton (4), being a public officer or person, to wit: A Child Care Specialist within the Department

---

[5] Title 14, section 1662(7) states the following:

Whoever, being a public officer or person charged with the receipts, safekeeping, transfer or disbursement of public monies *fraudulently* alters, falsifies, conceals, destroys or obliterates any account or documents relating thereto . . . shall be fined not more than ten thousand ($10,000) dollars or imprisoned not more than ten (10) years or both, and shall be disqualified from holding any public office.

of Human Services, (5) being charged with receipts, safekeeping, transfer, or disbursement of public monies, (6) aided and abetted by . . . [Appellant], (7) did fraudulently generate a check payable to Alvera Maduro for child care services not rendered.

(*Id.* 440 - 442.) In its final instructions to the jury, the trial court clearly failed to include the words "uses the same for any purpose not authorized by law" as an element of the crimes, even though the trial court attempted to recite the elements of the crime purportedly based on the allegations in the Second Amended Information. The omitted element in the final instructions to the jury for the crimes in Counts Five through Eight is codified in the language of section 1662(3) and is also embedded in Appellee's Second Amended Information. Undoubtedly, it was an inexplicable oversight by the trial court when it omitted the correct element of the crimes but inserted an erroneous element into the same crimes when reciting its final instructions to the jury.

Although some of the elements in the final instructions to the jury on sections 1662(3) and 11(a) are fairly consistent with the language in the Virgin Islands Code and the Second Amended Information, the trial court recited an incorrect element in the final instruction, by reciting as an element of the crimes the language "fraudulently generated a check." This language is incongruous with the statutory language of section 1662(3), which requires the element of "uses the same for any purpose not authorized by law." The statutory language of section 1662(3) is devoid of any requirement that defendant must *fraudulently generate* a check or "fraudulently" do anything. To re-emphasize, Appellee included the language of "fraudulently generated a check" in the inartfully crafted and protracted language in Counts Five through Eight of the Second Amended Information. This inclusion undoubtedly misled the trial court when it formulated the elements of the crimes in Counts Five through Eight. Essentially, while the language, "fraudulently generated a check," in Counts Five through Eight is superfluous as to the crime in subsection (3), the same language is a cornerstone and underpinning element of the crime in subsection (7) of section 1662, which is not the crime with which Appellant is charged in Counts Five through Eight. Unfortunately, the trial court substituted the erroneous language "fraudulently generated a check" for the correct language "uses the same for a purpose not authorized by law."

**B. The omission of an element of a crime constitutes plain error that affects the substantial rights of the accused.**

Although Appellant failed to raise this issue on appeal, I nevertheless consider the omission as plain error that affects the substantial rights of an Appellant. *V.I. v. Rosa*, 399 F.3d 283, 290 (3d Cir. 2005). Where there is plain error for which an Appellant failed to object at trial, an appellate court can address the error only if (1) a trial court commits an error; (2) that is plain; (3) which affects a defendant's substantial rights; and (4) affects the outcome of the court's proceedings. *Id.* at 293.

The omission of an essential element of a crime from jury instructions constitutes error that affects a defendant's substantial rights. *United States v. Stansfield*, 101 F.3d 909, 922 (3d Cir. 1996) (Concluding that the omission of the element "intent to kill" from jury instructions "seriously affected the fairness, integrity or public reputation of judicial proceedings."); *United States v. Castano*, 543 F.3d 826, 835 (6th Cir. 2008). In addressing the first and second factors, I conclude, from my comparisons between section 1662(3) and the final instructions to the jury, that the trial court omitted an element of the crime from the final instructions. On the third factor, the error of omitting an element of the crime was prejudicial and affected Appellant's substantial rights. The prejudice to Appellant affecting her substantial rights occurred when she was convicted by the jury of four crimes when the same jury did not consider whether Appellee had proven all the correct elements of the same crimes, beyond a reasonable doubt. Therefore, the trial court's incorrect final instructions to the jury constituted plain error which affected Appellant's substantial rights.

Importantly, the fourth factor under a plain error analysis is unmistakably satisfied when a prosecutor is relieved of proving every element of the crime in the information. The reason is that Appellant's due process rights, under the Fourteenth Amendment, and her Sixth Amendment right to trial by jury, taken together, entitle Appellant to a jury determination that she is guilty of every element of the crime charged, beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476 -77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (*citing United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995)).

The United States Court of Appeals for the Third Circuit ("the Third Circuit") has opined that:

It is settled that due process requires the prosecution to prove beyond a reasonable doubt every fact necessary to establish the offense as charged against the defendant. . . . Indeed, consistent with *In re Winship*[, 397 U.S. 358, 364 (1970),] and its progeny, we have noted that, although it is not a *per se* rule, the omission of an essential element of an offense in a jury instruction *ordinarily* constitutes plain error.

*United States v. Dobson*, 419 F.3d 231, 240 (3d Cir. 2005) (internal citations and quotations omitted). Therefore, it is unquestionable that the trial court inadvertently committed plain error when in the final instructions to the jury, it recited and imparted to the jury an incorrect final instruction on the elements of the crimes under sections 1662(3).

It is well settled within the scope of the Fourteenth Amendment of the United States Constitution[6] that "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Apprendi v. N.J.*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)) (internal quotations omitted); *see also United States v. Dobson*, 419 F.3d 231, 240 (3d Cir. 2005); *United States v. Alferahin*, 433 F.3d 1148, 1157 (9th Cir. 2006). Additionally, the Sixth Amendment[7] right to a speedy and public trial by an impartial jury "indisputably entitle[s] a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi*, 530 U.S. at 477. Therefore, "[a] defendant's due process rights are unquestionably implicated when his purported conviction rests on anything less than a finding of guilt as to all the elements of the crime." *Alferahin*, 433 F.3d at 1157. Moreover, with the exclusion of the element "uses the same for any purpose not authorized by law" from the jury instructions on the elements of the crimes in Counts Five through Eight, Appellee's burden for securing a conviction against Appellant became less arduous, while simultaneously compromising Appellant's fundamental rights to a fair trial. Furthermore, "jury

---

[6] U.S. CONST. amend. XIV, § 1 states that "nor shall any State deprive any person of life, liberty, or property, without due process of law."

[7] In relevant parts, U.S. CONST. amend. VI states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State . . . ."

instructions that relieve the Government of this burden violate a defendant's due process right." *United States v. Korey*, 472 F.3d 89, 93 (3d Cir. 2007) (citing *Carella v. Cal.*, 491 U.S. 263, 265, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989)).

Importantly, jury instructions that relieve the prosecution of its burden of proving every element of an offense beyond a reasonable doubt "subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases." *Id.* (*citing Francis v. Franklin*, 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985)). Therefore, whether requested or not, the jury is to be instructed on each and every essential element of the offense charged, *Screws v. United States*, 325 U.S. 91, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945), and failure to do so constitutes error. *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *United States v. Gracidas-Ulibarry*, 231 F.3d 1188 (9th Cir. 2000).

Crucially, courts have informed that the omission of an essential element of a crime from jury instructions constituted error that affected a defendant's substantial rights. Foremost, in *United States v. Stansfield*, 101 F.3d 909, 922 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit ("Third Circuit") concluded that the omission of the element "intent to kill" from the jury instructions "seriously affected the fairness, integrity or public reputation of judicial proceedings" and remanded the case for a new trial. Nearly two decades earlier, in *United States v. King*, 521 F.2d 61, 63 (10th Cir. 1975), the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") reversed the trial court's decision, because the Tenth Circuit found that the trial court omitted an element of the crime of conspiracy from the jury instructions. Similarly, in *United States v. Bryant*, 461 F.2d 912, 921 (6th Cir. 1972), the United States Court of Appeals for the Sixth Circuit reversed the trial court's decision, because specific intent, which was an element of the crime charged, was excluded from the jury instructions. Undoubtedly, the circumstances in those cases are no different from this case. Moreover, when the element of "uses the same for any purpose not authorized by law" was excluded from the jury instructions on the elements of the crimes in Counts Five through Eight, an unrectifiable deficiency was created in the final jury instructions.

Nonetheless, the validity of a challenge to jury instructions must be considered against the complete jury instructions and the whole trial

record. *See Byrd v. Lewis*, 510 F.3d 1045, 1050 (9th Cir. 2007). After an exhaustive review of the whole trial record, I conclude that Appellant was not afforded a fair trial on Counts Five through Eight, because the deficiency in the final instructions to the jury was never cured.

When the trial court delivered the jury instructions on the elements of the crimes in Counts Five through Eight, the trial court specifically directed the jurors' attention to what the trial court contended are the elements of those crimes; therefore, the jurors paid particular attention to the trial court's rendition of the instructions concerning the specific elements of those crimes. The specific elements of a crime are the only elements the jurors must consider in their deliberation, as they compare the evidence in the case with the trial court's instructions on the specific elements of the crime. Unfortunately, in the specific instructions on the elements of the crimes in Counts Five through Eight, the trial court neglected to include "uses the same for any purpose not authorized by law," which is an underpinning element of the crimes.

In cases where courts have found that the omission of an element of the crime from jury instructions did not affect the defendant's substantial rights, the courts found that there was a functional equivalent of the elements of that crime in other charges against the defendant in the same trial. *See Alferahin*, 433 F.3d at 1157 (citing *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) and *United States v. Baldwin*, 987 F.2d 1432, 1439 (9th Cir. 1993)). In *Baldwin*, the Ninth Circuit found that the defendant's guilt on another count of his indictment, which was similar to the charge in question, was the functional equivalent of a finding on the missing element of the crime charged. *Id.* at 1439. There, the *Baldwin* court found that the omission did not affect the defendant's substantial rights. In contrast, however, the factual circumstances are different in this case; therefore, *Baldwin* is distinguishable from this case.

Importantly, no element in the crimes charged in Counts One through Four and Count Nine is remotely synonymous with or tantamount to the element of "uses the same for any purpose not authorized by law" in Counts Five through Eight. Therefore, no functional equivalent of the missing element of Counts Five through Eight exists in the crimes charged in Counts One through Four and Count Nine.

This case is not a case in which a part of an instruction had been erroneously given, which may be rectified by the totality of the jury

instructions. This case involves both an omission of an element of the crimes charged from the final instructions to the jury and an erroneous substitution of a pivotal element of the crimes charged in the same final instructions to the jury. Therefore, the circumstances in this case merit reversal of Appellant's convictions on Counts Five through Eight.

### C. A trial court cannot substitute its own words with an actual element of a crime if the substituted element is not synonymous with the actual element of the crime.

The trial court should have applied the language from section 1662(3) and the Second Amended Information to require that Appellee prove that (1) Appellant aided and abetted; (2) Hamilton, a public officer or person charged with the receipts, safekeeping, transfer, or disbursement of public monies in DHS as child care specialist; (3) who used the same for any purpose not authorized by law. (Second Am. Information at 3-4.) Instead, the trial court instructed the jury that an element of the crimes is the language, "fraudulently generat[ing] a check payable to . . . Maduro for child care services not rendered," (J.A. at 441.), even though this language is not contained in the statutory language of section 1662 (3).

Although I believe that Counts Five through Eight involve an oversight or simple inadvertence, or an instance of the trial court being misled by the protracted language in the Second Amended Information on these counts, a trial court, in its final instructions to the jury, simply cannot substitute a statutory element of a crime with an erroneous element of the same crime. *United States v. Harrelson*, 754 F.2d 1153, 1173-74 (5th Cir. 1985) (Concluding that the trial court's substitution of an element of a crime constituted reversible error); *see United States v. Castano*, 543 F.3d 826, 835 (6th Cir. 2008) ("We noted that amendments of indictments 'are considered prejudicial *per se*, warranting reversal of a conviction, because they 'directly infringe upon the Fifth Amendment guarantee' to hold a defendant answerable only for those charges levied by a grand jury.' ") (citing *United States v. Combs*, 369 F.3d 925, 935 (6th Cir. 2004); *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989). I must underscore the error in this case, which is twofold. First, there is an omission of a pivotal element of the crimes charged in Counts Five through Eight. Second, there is a substitution, in the final jury instruction, of the omitted element of the crimes charged in Counts Five through Eight with an erroneous element taken from other crimes in the Second Amended Information.

407

In *United States v. Wilkinson*, 137 F.3d 214, 226 (3d Cir. 1998), the Third Circuit found no error where a trial court substituted the words of an element of a crime from a statute with its own words. In *Wilkinson*, the court's substituted element, "false declarations before a grand jury or court" was synonymous with the element of the crime in the statute, "perjury generally."

However, *Wilkinson* is distinguishable from this case. In this case, the trial court's own element, "fraudulently generate a check . . ." is not synonymous with "uses the same for any purpose not authorized by law." The language "fraudulently generated a check" is extremely restrictive, whereas the language, "uses the same for purpose not authorized by law," encompasses a plethora of circumstances and an endless amount of possibilities. If the Virgin Islands Legislature ("Legislature") had intended the words "uses the same for purpose not authorized by law" in subsection (3) to be synonymous with the language, "fraudulently generated a check" or the word "fraudulently" in subsection (7) of section 1662 in title 14, the Legislature would have embedded the exact and precise language in both subsections (3) and (7).

To conclude, when the trial court neglected to instruct the jury that before it could find Appellant guilty of violating sections 1662(3) and 11(a) it must find, as one of the elements, that Appellant "used the same for purpose not authorized by law," Appellee was relieved of its duty to prove that particular element beyond a reasonable doubt. Instead, the trial court substituted this element with "fraudulently generated a check" and incorrectly instructed the jury that this was one of the elements Appellee was required to prove beyond a reasonable doubt.

## V. CONCLUSION

With reference to Counts Five through Eight of the Second Amended Information, I would reverse Appellant's convictions on these counts. The trial court's failure to instruct the jury on all the elements of the crime in section 1662(3) constituted plain error, because the trial court relieved Appellee of its burden to prove a necessary element of the four crimes, beyond a reasonable doubt. When Appellee was not required to prove a pivotal element of the crime in section 1662(3), the lack of proof was

prejudicial error affecting Appellant's substantial rights. Lastly, I would remand this case to the trial court with instructions to vacate Appellant's convictions on Counts Five through Eight of the Second Amended Information.