**JERMAINE A. WILLIAMS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2011-0048

Supreme Court of the Virgin Islands

June 29, 2012

PAULA D. NORKAITIS, ESQ., Birch, De Jongh & Hindels, St. Thomas, USVI, *Attorney for Appellant.*

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(June 29, 2012)

HODGE, *Chief Justice*. Jermaine A. Williams appeals his convictions for second degree murder, first degree assault, and third degree assault for shooting and killing Delano Dowe. He argues that the Superior Court improperly admitted Elroy Faulkner and Devoson Maynard's prior inconsistent statements to prove that he shot and killed Dowe. He also argues that his convictions for second degree murder, first degree assault, and third degree assault were multiplicitous, and that there was insufficient evidence to prove that he shot and killed Dowe. We conclude that the Superior Court properly admitted Faulkner and Maynard's prior inconsistent statements, and based on these statements there was sufficient evidence to establish that Williams shot and killed Dowe. However, convicting Williams of three separate offenses which all arose from a single act violates the Double Jeopardy Clause's protection against multiple punishments for the same offense.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

In the early morning hours of February 17, 2010, Delano Dowe was shot and killed in the Simmonds Alley area of St. Thomas. (J.A. 132.) Detective Albion George of the Virgin Islands Police Department (VIPD) was subsequently assigned to investigate the shooting. (J.A. 184.) On March 1, 2010, during the course of the investigation, Detective George was approached by Devoson Maynard. (J.A. 180.) According to Detective George, Maynard indicated that he had heard several gunshots while at his home in the Simmonds Alley area on February 17, 2010, which caused him to look outside and he saw Williams, who was dressed in all black,

leaving Simmonds Alley.[1] (J.A. 180, 197-99.) That same day, Detective George also spoke with Elroy Faulkner, who gave Detective George a written statement that he had witnessed the shooting in Simmonds Alley on February 17, 2010. (S.A. 15-19.)[2] In his statement, Faulkner asserts that he was in Simmonds Alley on February 17, 2010, between 3 a.m. and 4 a.m., when he saw an individual he knew as "Rocker" dressed in all black walk into the alley carrying a gun. (S.A. 15.) According to Faulkner's statement, "Rocker" walked up some stairs to where Dowe was standing, pointed his gun at Dowe, and began firing. (S.A. 15.) After firing five to six shots, "Rocker" ran back down the steps, out of the alley, and drove away in a green two-door Honda vehicle. Three days later Faulkner identified Williams from a photo array as the individual he knew as "Rocker," whom he had seen shoot Dowe in Simmonds Alley on February 17, 2010.[3] (J.A. 189-91; S.A. 15.)

After receiving this information Detective George began surveying St. Thomas for Williams, and eventually observed him driving a green two-door Honda. (J.A. 194-95.) Based on this information, Detective George obtained an arrest warrant for Williams, and on April 2 Williams was stopped while driving the green two-door Honda and placed under arrest. The People subsequently charged Williams with first degree murder pursuant to 14 V.I.C. §§ 921, 922(a)(1), first degree assault pursuant to 14 V.I.C. § 295(1), third degree assault pursuant to 14 V.I.C. § 297(2), and three counts of unauthorized use of a firearm during the commission of a crime of violence pursuant to 14 V.I.C. § 2253(a).[4] Prior to trial, Faulkner made a written statement recanting his March 1, 2010 statement to Detective George. (S.A. 1-2.) In his recantation, Faulkner claimed that on the night of the shooting he was at home and that he did not witness anything involving Williams. (S.A. 1.) He further claimed that his March 1, 2010 statement implicating Williams in the shooting was

[1] Detective George testified that he spoke with Maynard again the next day and Maynard restated what he had previously told Detective George. (J.A. 181.) Maynard, however, never provided Detective George with a written statement.

[2] "S.A." refers to the Supplemental Appendix filed by the People on January 24, 2012.

[3] There was other testimony presented at trial that Williams went by the nickname "Rocker." (J.A. 169.)

[4] Each count of unauthorized use of a firearm during the commission of a crime of violence related specifically to one of the other three charges — first degree murder, first degree assault, and third degree assault.

given in response to coercive tactics by the police and was made under duress.

Faulkner testified at trial that he did not recall the substance of the statement that he made to Detective George on March 1, 2010, and that he was forced to make that statement. (J.A. 79.) He further testified that he never identified Williams from a photo array, and he only signed his name next to Williams's picture because he was so instructed by the police. (J.A. 76.) At trial Maynard also denied ever telling Detective George that he saw Williams leaving Simmonds Alley on February 17, 2010, after hearing several gunshots. (J.A. 171.) In response, the People introduced Faulkner's March 1, 2010 statement into evidence and called Detective George to testify to what Maynard had previously told him. Additionally, the People presented evidence that Williams was seen driving a green two-door Honda several times after the February 17, 2010 shooting, including on April 2, 2010, when he was ultimately arrested. Based on this evidence the jury found Williams guilty of second degree murder (a lesser included offense of the first degree murder charge), first degree assault, third degree assault, and all three counts of unauthorized use of a firearm during the commission of a crime of violence. (J.A. 4-6.) Williams filed a timely notice of appeal on June 16, 2011.[5]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code gives this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Since the Superior Court's July 1, 2011 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over Williams's appeal. *See, e.g., Browne v. People*, S. Ct. Crim. No. 2010-0069, 2012 V.I.

---

[5] In his Notice of Appeal, Williams appealed the judgment and sentence imposed for each of his six convictions. However, he failed to make any arguments specifically addressing his three convictions for unauthorized use of a firearm during the commission of a crime of violence in his brief, or in any other filings with this Court. Williams has therefore waived his challenge to these convictions under 14 V.I.C. § 2253(a). *See* V.I.S.CT.R. 22(m) ("Issues that were . . . raised or objected to but not briefed . . . are deemed waived for purposes of appeal. . . ."); *Dowdye v. People*, 55 V.I. 736, 751 n.13 (V.I. 2011) (holding "an appellant [must] raise an issue in his opening brief or else waive the issue on appeal").

Supreme LEXIS 9, at *6 (V.I. Feb. 2, 2012) (recognizing that in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

We review the Superior Court's factual findings for clear error and exercise plenary review over the Superior Court's application of the law to those facts. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd* 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011). Likewise, this Court's review of the trial court's construction of a statute is plenary. *V.I. Pub. Serv. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 482 (V.I. 2008), *cert. denied*, No. 08-3398, slip op. at 1 (3d Cir. April 6, 2009). When a defendant challenges the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People, and affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Mendoza v. People*, 55 V.I. 660, 667 (V.I. 2011), *cert. denied*, No. 12-1255, slip op. at 1 (3d Cir. May 4, 2012). If an appellant fails to object to a Superior Court order or decision, however, we review for plain error. V.I.S.CT.R. 4(h); *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011).

## B. Faulkner and Maynard's Prior Inconsistent Statements

Williams first argues that the trial court erred in admitting Faulkner's March 1, 2010 written statement and Detective George's testimony concerning Maynard's March 1, 2010 oral statement to prove that Williams shot and killed Dowe. While Williams acknowledges that 14 V.I.C. § 19 allows the admission of a witness' prior inconsistent statement to prove the truth of the matter asserted, he claims these statements should have nonetheless been excluded because he was not afforded the opportunity to cross-examine either witness regarding them. Specifically, he argues that he was unable to cross-examine Faulkner or Maynard about the events surrounding Dowe's shooting because they both testified that they were not present at the time of the shooting and

had no information regarding the shooting. This argument misconstrues the requirements of section 19.[6]

 Pursuant to section 19:

> Evidence of a prior statement, oral or written, made by a witness is not made inadmissible by the hearsay rule if the prior statement is inconsistent with his testimony at a hearing or trial. After the witness has been given an opportunity at such hearing or trial to explain or deny the prior statement, the court shall allow either party to prove that the witness has made a prior statement, oral or written, inconsistent with his sworn testimony. Such prior statement shall be admissible for the purpose of affecting the credibility of the witness or for proving the truth of the matter asserted therein if it would have been admissible if made by the witness at the hearing or trial. *Each party shall be allowed to cross-examine the witness on the subject matter of his current testimony and the prior statement.*

14 V.I.C. § 19 (emphasis added). Williams argues that he was not able to cross-examine either Faulkner or Maynard about the subject matter of their prior statements because both witnesses denied having any information regarding the February 17, 2010 shooting. Williams's interpretation of section

---

[6] On April 7, 2010 the Governor signed into law Act No. 7161, section 15, which repealed the local URE and replaced it with the Federal Rules of Evidence. *See Smith v. People*, 55 V.I. 957, 961 n.2 (V.I. 2011). We take no position as to whether section 19, title 14 remains viable or was implicitly repealed when the Legislature enacted Act No. 7161 because Williams failed to raise this issue either in the Superior Court or on appeal to this Court. The fact that neither Williams nor the People adequately address this issue in their appellate briefs does not mandate that we abstain from resolving this issue, "because the parties cannot stipulate to the law, especially in a situation such as this where the decision may impact other pending or future cases." *Matthew v. Herman*, S. Ct. Civ. No. 2009-0074, 2012 V.I. Supreme LEXIS 43, at *13 (V.I. May 15, 2012). Instead, we decline to resolve this here because, if we were to reach the issue *sua sponte* and without the benefit of briefing or argument by the parties, our holding would not affect the outcome of this appeal, since Williams's forfeiture of the issue would compel us to review solely for plain error. Other courts in this jurisdiction have specifically concluded that Act No. 7161 did not repeal section 14 V.I.C. § 19. *See Government of the V.I. v. Bellot*, No. 10-3475, 2012 U.S. App. LEXIS 6448, at *8 (3d Cir. March 30, 2012); *People v. Donastorg*, 54 V.I. 22, 36 (V.I. Super. Ct. 2010). Williams thus cannot satisfy the second prong of the plain error test, that any error be "plain." *See Murrell v. People*, 54 V.I. 338, 366 (V.I. 2010) (explaining that an error is "plain" only if the error is clear under current law) (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003)). Accordingly, even if this Court were to address the issue *sua sponte* and conclude that section 19 was repealed by Act No. 7161, it would not constitute plain error.

19, however, is too restrictive. Section 19's requirement that "[e]ach party shall be allowed to cross-examine the witness on the subject matter of his current testimony and the prior statement" is similar to the right to cross-examine adverse witnesses provided under the Sixth Amendment's Confrontation Clause. *See Ramirez v. People*, S. Ct. Crim. No. 2009-0078, 2012 V.I. Supreme LEXIS 18, at *27 (V.I. March 2, 2012).

Under the Confrontation Clause, criminal defendants have the right to cross-examine any witness who gives testimony against him. *See Maryland v. Craig*, 497 U.S. 836, 845-46, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990) (holding the Confrontation Clause encompasses the right to "personal examination . . . [and] insures that the witness will give his statements under oath . . . [and] submit to cross-examination") (internal quotation marks and citation omitted). This right, however, "guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988) (emphasis in original) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987)). When a witness "is present at trial and subject to unrestricted cross-examination . . . the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Id.* at 560 ("We do not think that a constitutional line drawn by the Confrontation Clause falls between a forgetful witness' live testimony that he once believed this defendant to be the perpetrator of the crime, and the introduction of the witness' earlier statement to that effect."). The United States Supreme Court has thus held that effective cross-examination requires only that "the trier of fact [have] a satisfactory basis for evaluating the truth of the prior statement." *California v. Green*, 399 U.S. 149, 161, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).

■ Here, both Faulkner and Maynard were present at Williams's trial, were confronted with their prior statements, and were subject to unrestricted cross-examination by defense counsel. *See Owens*, 484 U.S. at 559. Moreover, Williams was not denied the opportunity to effectively cross-examine Faulkner and Maynard simply because both witnesses denied making their prior statements to police implicating Williams in Dowe's shooting and testified that they had not witnessed anything related to Dowe's shooting. *See State v. Stokes*, 381 S.C. 390, 673 S.E.2d

434, 440-41 (S.C. 2009) (defendant was not denied effective cross-examination of witness because witness denied making prior statement); *State v. Pierre*, 277 Conn. 42, 890 A.2d 474, 500 (Conn. 2006) (the denial or inability of a witness to recall the events recorded in a prior statement does not deprive a defendant the opportunity for effective cross-examination) (collecting cases); *State v. Price*, 158 Wn.2d 630, 146 P.3d 1183, 1192 (Wash. 2006) (when a witness is asked questions about his or her prior statements, but answers that he or she is unable to remember the prior statements, this provides the defendant sufficient opportunity for cross-examination); *People v. Butler*, 127 Cal. App. 4th 49, 25 Cal. Rptr. 3d 154, 162 (Cal. Ct. App. 2005) (rejecting argument that defendant had no meaningful opportunity for cross-examination because witness denied making her prior inconsistent statement); *see also United States v. McKeithan*, No. 02-1059, 2002 U.S. App. LEXIS 23408, at *3-4 (3d Cir. 2002) (unpublished). Accordingly, Williams was given the opportunity to effectively cross-examine Faulkner and Maynard regarding their March 1, 2010 statements to police in a manner satisfying the requirements of the Confrontation Clause, and the trial court did not err in admitting those statements under 14 V.I.C. § 19.

## C. Multiplicitous Convictions

█ Williams next argues that his convictions for second degree murder, first degree assault, and third degree assault were multiplicitous, and that his convictions for first and third degree assault should have merged with his conviction for second degree murder. He thus contends that the trial court's failure to merge these offenses has subjected him to multiple punishments for a single criminal act in violation of the Double Jeopardy Clause of the Fifth Amendment. Williams, however, failed to raise this issue in the Superior Court. Accordingly, we will only review for plain error. *See Francis v. People*, 52 V.I. 381, 390 (V.I. 2009); *United States v. Zalapa*, 509 F.3d 1060, 1064 (9th Cir. 2007) ("Where a defendant fails to raise the issue of multiplicity of convictions and sentences before the [trial] court, [the court] review[s] the [trial] court's decision for plain error."). Under the plain error rule,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute;

(3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the [trial] court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 560 U.S. ___, 130 S. Ct. 2159, 2164, 176 L. Ed. 2d 1012 (2010) (internal quotation marks and citations omitted); *Francis*, 52 V.I. at 390-91.

■■ The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "As a general proposition, when a defendant has violated two different criminal statutes, the Double Jeopardy Clause is implicated when both statutes prohibit the same act or transaction or when one act is a lesser included offense of the other." *United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009) (citing *Rutledge v. United States*, 517 U.S. 292, 297, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996)). "The constitutional guarantee against double jeopardy merely assures that the court does not 'exceed its legislative authorization by imposing multiple punishments for the same offense.' " *Id.* (quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)). *See Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983) ("[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). In determining when dual statutory provisions prohibit the same offense, the Supreme Court has articulated a black letter rule: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). The *Blockburger* test, however, "is a 'rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz v. United States*, 450 U.S. 333, 340, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981). Title 14, section 104 of the Virgin Islands Code provides exactly "that clear indication of contrary legislative intent" described in *Albernaz*. As expressly provided in section 104,

[a]n act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

The plain language of section 104 indicates that despite the fact that an individual can be charged and found guilty of violating multiple provisions of the Virgin Islands Code arising from a single act or omission, that individual can ultimately only be punished for one offense.[7]

■ Here, Williams was charged with first degree murder, first degree assault, and third degree assault for shooting Dowe on February 17, 2010. He was subsequently found guilty of second degree murder, first degree assault, and third degree assault, and sentenced to twenty years incarceration for second degree murder, fifteen years incarceration for first degree assault, and five years incarceration for third degree assault, with the sentences ordered to be served concurrently. It is clear from the record, and the People do not dispute, that these crimes are based on a single act. Thus, they constitute a single offense under section 104, and the trial court exceeded its authority by imposing multiple punishments for the same offense.

■ Furthermore, convicting and punishing Williams of multiple crimes arising from the same act constitutes plain error, despite the fact that Williams's sentences for second degree murder, first degree assault, and third degree assault were ordered to be served concurrently. *See Ball v. United States*, 470 U.S. 856, 864-65, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985) (multiplicitous convictions constitute impermissible punishment, even if sentences are served concurrently and no greater sentence results); *accord Rutledge*, 517 U.S. at 304; *United States v. Tann*, 577 F.3d 533, 538-40 & n.7 (3d Cir. 2009) (collecting cases).[8] In *Ball*, the

---

[7] This interpretation of section 104 is consistent with how courts have interpreted an identical California statute. *See People v. Pearson*, 42 Cal. 3d 351, 228 Cal. Rptr. 509, 721 P.2d 595, 599-600 (Cal. 1986) (holding that section 654(a) of the California Penal Code — which prior to being amended in 1997 contained language identical to that in title 14, section 104 — prohibits multiple punishments based on a single act or an indivisible course of conduct).

[8] We recognize that this conclusion is in direct conflict with our holding in *Brown v. People*, 55 V.I. 496, 505-07 (V.I. 2011). In *Brown*, the defendant contended that the Superior Court erred when it failed to merge his conviction for first degree assault with his conviction for

United States Supreme Court held that multiple convictions for the same offense constitute impermissible punishment under the Double Jeopardy Clause, even if the sentences for the convictions are served concurrently and no greater sentence results. *Ball*, 470 U.S. at 864. As explained by the Supreme Court, an additional

> conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

*Id.* at 864-65 (emphasis in original) (citations omitted). *Accord Rutledge*, 517 U.S. at 300-04; *Tann*, 577 F.3d at 538-40 & n.7 (multiple convictions for the same offense, even if the sentences are ordered to be served concurrently, affect a defendant's substantial rights and constitute plain error). Therefore, imposing multiple punishments for the same offense by convicting and pun-

---

attempted murder. *Id.* at 505-06. We declined, however, to decide whether first degree assault is a lesser included offense of attempted murder because the Superior Court imposed concurrent fifteen year sentences for both of these offenses. *Id.* at 505. We concluded that "even if this Court were to assume without deciding that the Superior Court should have merged these offenses, the error — if any — does not warrant reversal under the plain error standard of review" because it did not affect the defendant's substantial rights. *Id.* In reaching this conclusion, we relied on the United States Court of Appeals for the Third Circuit's decision in *United States v. Gricco*, 277 F.3d 339, 351 (3d Cir.2002), which held that concurrent sentences and small special assessments do not affect defendants' substantial rights. Our reliance on *Gricco*, however, was misplaced. In *United States v. Cesare*, the United States Court of Appeals for the Third Circuit recognized that the language in Gricco, which we relied upon in *Brown*, conflicts with the United States Supreme Court's holdings in *Ball* and *Rutledge*, and its decision in *Tann*. 581 F.3d 206, 208 n.3 (3d Cir. 2009). It thus overruled the language in *Gricco* which concluded that concurrent sentences and small special assessments do not affect a defendant's substantial rights, and held that *Tann*, which was decided based on *Ball* and *Rutledge*, was controlling. Similarly, we conclude that to the extent our decision in *Brown* contradicts *Ball, Rutledge*, and *Tann*, it is overruled, and imposing concurrent sentences for multiple crimes arising from a single act is an error that affects a defendant's substantial rights.

ishing Williams of three separate crimes which all arose from a single act constitutes plain error.[9]

---

[9] Since a defendant found guilty of multiple offenses arising from a single act cannot be convicted and punished separately for each offense, the proper procedure is to sentence the defendant for one offense and stay the imposition of any punishment for all the remaining offenses which arose out of the same act or indivisible course of conduct. *See In re Kendall*, S. Ct. Misc. No. 2009-0025, 2012 V.I. Supreme LEXIS 20, at *4 (January 27, 2012); *see also In re Pope*, 50 Cal. 4th 777, 114 Cal. Rptr. 3d 225, 237 P.3d 552, 556-57 (Cal. 2010); *People v. Pearson*, 42 Cal. 3d 351, 228 Cal. Rptr. 509, 721 P.2d 595, 599 (Cal. 1986). This procedure eliminates the punitive consequences of multiple convictions, while ensuring that a defendant will not receive a windfall if the conviction for the crime being punished is reversed on appeal or vacated in a habeas corpus proceeding. *Pearson*, 721 P.2d at 600. As a practical matter, a conviction which has been stayed shall not be used to delay a defendant's eligibility for parole, increase a defendant's sentence for a future offense under a recidivist statute, or impeach a defendant's credibility in future proceedings. Moreover, upon successful completion of the sentence imposed, the convictions which were stayed shall be dismissed. But if the conviction for the offense being punished was reversed on appeal or vacated in a habeas corpus proceeding, the defendant would be returned to the sentencing court so that punishment for a conviction previously stayed would be imposed. *See In re Pope*, 237 P.3d at 557. Furthermore, the decision of which conviction to impose punishment for violating, and which convictions to stay, is completely within the discretion of the trial court. *See Williams v. Roe*, 421 F.3d 883, 887 (9th Cir. 2005) (holding that under an earlier version of California Penal Code section 654(a) — which had language identical to that of 14 V.I.C. § 104 — the trial court had the discretion to punish a defendant for any of the crimes of which he was found guilty based on the same act). Therefore, on remand, the Superior Court is directed to impose punishment for one of the crimes of which Williams was found guilty — second degree murder, first degree assault, or third degree assault — and stay the imposition of punishment for the remaining two crimes.

On remand, the Superior Court should also impose punishment for one of the unauthorized use of a firearm during the commission of a crime of violence violations for which Williams was found guilty and stay the imposition of punishment for the remaining two. We recognize that Williams failed to argue on appeal that his three convictions for unauthorized use of a firearm during the commission of a crime of violence were separate punishments arising from a single act. However, this Court has consistently considered issues not raised on appeal when the issue involves a plain error that affects a defendant's substantial rights. *See, e.g., Brown*, 55 V.I. at 500; *Dunlop v. People*, S. Ct. Crim. No. 2008-0037, 2009 V.I. Supreme LEXIS 41, at *20 (V.I. Sept. 15, 2009) (unpublished). We further note that convictions for violating title 14, section 2253(a) and the predicate crime of violence referenced in section 2253(a) are not multiplicitous because the Legislature clearly intended for defendants to be punished for violating section 2253(a), as well as for committing the predicate crime of violence referenced in section 2253(a). *See* 14 V.I.C. § 2253(a) ("The foregoing applicable penalties provided for violation of this section shall be in addition to the penalty provided for the commission of, or attempt to commit, the felony or crime of violence."); *see also Government of the Virgin Islands v. Soto*, 718 F.2d 72, 78 (3d Cir. 1983).

## D. Sufficiency of the Evidence

Williams puts forth several additional arguments which although couched under different headings,[10] essentially argue that there was insufficient evidence presented at trial to prove that he shot and killed Dowe.[11] Specifically, Williams contends that Faulkner and Maynard's prior inconsistent statements were insufficient to allow a jury to reasonably conclude that he shot and killed Dowe because both witnesses disavowed their statements at trial and testified that they were not present at the time of the shooting and had no information regarding the shooting. Alternatively, Williams argues that Faulkner and Maynard's statements implicating him in the shooting, if believed, only establish that he was seen leaving the scene of the shooting, and there is no evidence that he was actually involved in the shooting. These arguments, however, ignore the applicable standard of review, as well as the evidence presented at trial.

"When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *Fontaine v. People*, S. Ct. Crim. No. 2010-0029, 2012 V.I. Supreme LEXIS 32, at *5 (V.I. April 12, 2012). We are prohibited from weighing the evidence or determining the credibility of witnesses. *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009). And if any rational trier of fact could have found the essential

---

[10] Williams asserts in his brief that the trial court should have granted his motion for a new trial pursuant to Superior Court Rule 135, that the trial court should have granted his motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), and that there was insufficient evidence to support the jury's verdict. In each of these sections of his brief, however, Williams merely argues that Faulkner and Maynard's prior inconsistent statements should not have been admitted into evidence and, in the alternative, that their statements are not sufficient to establish that he shot Dowe. Since we have already concluded that Faulkner and Maynard's prior inconsistent statements were properly admitted under 14 V.I.C. § 19, we will only address whether these statements were sufficient to establish that Williams shot Dowe.

[11] It is not clear from Williams's brief which of his convictions he contends are not supported by sufficient evidence, although he does briefly argue that the People failed to prove that he shot Dowe with malice aforethought. Instead, Williams appears to argue that none of his convictions should stand because there was insufficient evidence to establish that he shot and killed Dowe.

elements of the crime beyond a reasonable doubt, we must affirm the conviction. *Mendoza*, 55 V.I. at 667.

■ At trial the People introduced a written statement Faulkner gave to the police, which stated that he saw Williams, who was dressed in all black, walk into Simmonds Alley carrying a gun. He further stated that Williams walked up some stairs to where Dowe was standing, pointed his gun at Dowe, and began firing. After firing several shots, Faulkner indicated that Williams ran out of the alley and drove away in a green two-door Honda. The People also presented evidence that Faulkner knew Williams by his nickname "Rocker" and identified Williams from a photo array as the individual who had shot Dowe. Additionally, Detective George testified at trial that Maynard told him that he had heard several gunshots while at home on the night of the shooting, and that after he heard these gunshots he looked outside and saw Williams, who was dressed in all black, leaving Simmonds Alley. The medical examiner testified that Dowe's cause of death was a gunshot wound to the pelvis. (J.A. 152.) Finally, the People presented evidence that at the time of Williams's arrest, he was driving a green two-door Honda, which matched the description of the car Faulkner had said he saw Williams flee in after the shooting. From this evidence a rational jury could conclude beyond a reasonable doubt that Williams was the individual who shot and killed Dowe in Simmonds Alley on February 17, 2010. Moreover, based on Faulkner's statement that Williams entered the alley carrying a gun, walked up to Dowe and pointed the gun at him, and then began firing, a rational jury could also reasonably infer that Williams killed Dowe with malice aforethought. Although both Faulkner and Maynard disavowed these statements at trial and testified that they were not present at the time of the shooting and had no information regarding the shooting, the jury was free to believe Faulkner and Maynard's prior statements to Detective George and reject their testimony at trial. And if we accept that is what the jury did, as the standard of review requires, there was sufficient evidence to establish that Williams shot and killed Dowe in Simmonds Alley on February 17, 2010, and that he did so with malice aforethought. Accordingly, we reject Williams's argument that there was insufficient

evidence to sustain his convictions because the People failed to prove that he shot and killed Dowe.[12]

## III. CONCLUSION

Williams was given the opportunity to effectively cross-examine Faulkner and Maynard regarding their prior inconsistent statements to police in a manner satisfying the requirements of the Confrontation Clause, and the trial court did not err in admitting those statements under 14 V.I.C. § 19. Furthermore, those statements provided sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that Williams shot and killed Dowe. Convicting and punishing Williams of three separate offenses which all arose from a single act, however, violates the Double Jeopardy Clause and 14 V.I.C. § 104's protection against multiple punishments for the same offense. Therefore, this matter is remanded to the Superior Court so that it may impose punishment for either second degree murder, first degree assault, or third degree assault, as well as the corresponding section 2253(a) offense, and stay the imposition of punishment for the remaining offenses.

---

[12] Williams's brief also briefly argues that he is entitled to a new trial because he was denied his constitutional right to a fair trial. Williams, however, fails to specifically state why he was denied a fair trial. Instead, he appears to be arguing that because of the errors alleged above, he is entitled to a new trial. The only error that occurred, however, was the imposition of multiple convictions. Moreover, this error did not affect Williams's right to a fair trial, as it occurred after the trial concluded. Accordingly, this argument is meritless.