**CRYSTAL IRONS, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2010-0042

Supreme Court of the Virgin Islands

September 21, 2012

KELE C. ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

PAUL J. PAQUIN, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

### OPINION OF THE COURT

CABRET, *Associate Justice.* Following a plea agreement, Crystal Irons pled guilty to second degree murder. At sentencing the trial court

474

erroneously sentenced her for using a dangerous weapon during the commission of a crime of violence in addition to second degree murder. The court subsequently corrected this mistake, but Irons was not present at that hearing. She now appeals her sentence, arguing that she was required to be present at the subsequent hearing correcting her sentence and that the trial court abused its discretion in sentencing her to twenty-five years for second degree murder. Neither the rules of the Superior Court nor the United States Constitution, however, require a defendant's presence when a sentence is reduced. Moreover, sentencing Irons to twenty-five years imprisonment for second degree murder was not an abuse of discretion. Therefore, we affirm the judgment of the Superior Court.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

Several years after Stewart Sargeant was stabbed to death in his own home, Irons was determined to be the assailant. She was arrested and charged with first degree murder and using a dangerous weapon during the commission of first degree murder. Although Irons initially pled not guilty to the crimes, she entered into a plea agreement with the People on March 26, 2010. Under the terms of the plea agreement, the People agreed to dismiss the pending charges against Irons in exchange for her guilty plea to second degree murder. The People also agreed to recommend a sentence of thirty years incarceration for the second degree murder charge. Based on this agreement, the People filed a second amended information dated April 8, 2010, charging Irons with first degree murder (Count 1), using a dangerous weapon during the first degree murder (Count 2), and second degree murder (Count 3). That same day Irons entered a plea of guilty to count three of the second amended information, second degree murder.[1] At the change of plea hearing, Irons was sworn, advised of her rights, and questioned. Following this allocution, the People gave an offer of proof regarding the factual basis for the plea. The trial court concluded that there was a factual basis for the plea, that Irons's plea was knowing and voluntary, and accepted Irons's plea of guilty to second degree murder.

---

[1] The trial court mistakenly referred to count one in entering Irons's guilty plea, but the mistake was immediately noticed and Irons properly entered a guilty plea to count three of the second amended information.

On June 2, 2010, at sentencing, the People recommended that Irons be sentenced to thirty years incarceration, Irons's counsel argued for time served, and Irons personally addressed the trial court about some of the hardships she faced throughout her life. After Irons had addressed the court, the trial court stated:

> The Court has thought long and hard about this sentence. I've considered the difficult path that Miss Irons had before her growing up, and that at a very young age she endured hardships far beyond those that many of us will ever face in our lives. I've also had to consider as well her previous contacts with the law, which are numerous [discusses Irons's criminal history].
>
> . . .
>
> This is one of those instances in which nothing that occurs in this courtroom brings anyone any joy. There are family members who have forever lost a loved one. There is Miss Irons whose life has been a hardship, but the facts have brought us to this point and it's my responsibility to impose a sentence commensurate with the offenses that have occurred.
>
> Miss Irons, please stand. (Defendant complies.) With regards to Count II, to a plea of guilty to the offense of using a dangerous weapon during the commission of a crime of violence, I sentence you to a term of 10 years imprisonment, a fine of $10,000, and $75 in court costs. With regard to your plea of guilty to count III, murder in the second degree, I sentence you to a concurrent sentence of 25 years.

(J.A. 39-42.)

 Shortly thereafter the trial court realized that it had made a mistake in sentencing Irons for the crime of using a dangerous weapon during the commission of a crime of violence, quickly calling her case again and stating:

> It's been brought to the Court's attention that I erroneously imposed a sentence on Count II of the information. In looking at the plea agreement and the proceedings for the day in question, I've determined that Miss Irons did not enter a plea of guilty to Count II, the using a dangerous weapon during the commission of a crime of violence. Therefore, the sentence imposed upon that offense is vacated. The Court enters judgment of conviction on Count III only, dismisses Counts I

476

and II with prejudice and leaves in place the sentence imposed on Count III, 25 years in prison. The $75 court costs will apply to that sentence and Miss Irons will be given credit for 120 days already served. The judgment will reflect a conviction only with regard to Count III.

(J.A. 44.) At the time the trial court called Irons's case to correct this error, however, Irons had already been taken from the courtroom by Bureau of Corrections personnel, and Irons's counsel waived her presence. The trial court's oral judgment sentencing Irons to twenty-five years imprisonment for second degree murder and dismissing counts one and two with prejudice was memorialized in a June 8, 2010 Judgment and Commitment. Irons filed her timely notice of appeal on June 4, 2010.[2]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Pursuant to title 4, section 32(a) of the Virgin Islands Code, this Court possesses jurisdiction "over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Since the Superior Court's June 8, 2010 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over Irons's appeal. *See, e.g., Browne v. People*, 56 V.I. 207, 216 (V.I. 2012) (recognizing that in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). To the extent a challenge to a guilty plea is based on constitutionally protected rights, our review is plenary. *Warner v. Gov't of the V.I.*, 332 F. Supp. 2d 808, 810 (D.V.I. App. Div. 2004). Finally, the

---

[2] A notice of appeal filed by a defendant in a criminal case after the announcement of the trial court's ruling, but before the entry of a written judgment embodying that ruling, is "treated as if filed on the date of and after entry of [the written judgment], and is considered timely filed." *Shoy v. People*, 55 V.I. 919, 924 n.2 (V.I. 2011).

Superior Court's "sentencing determination will be interfered with only upon a showing of illegality or abuse of discretion." *Id.*

## B. Correcting Irons's Sentence without her Presence

Irons argues that SUPERIOR COURT RULE 124, as well as the United States Constitution, required her to be physically present when the trial court corrected her sentence. We disagree.

■ ■ SUPERIOR COURT RULE 124 does not require the defendant's presence at a reduction of sentence hearing. According to Rule 124, "[t]he defendant shall be present at every stage of the trial and at the imposition of sentence. . . . The defendant's presence is not required at a reduction of sentence." SUPER. CT. R. 124. Thus, despite Rule 124's general provision requiring the defendant's presence at every stage of the trial and at the imposition of sentence, it specifically allows the trial court to conduct a hearing, without the defendant present, for the sole purpose of reducing her sentence. Here, Irons was initially sentenced to ten years imprisonment and fined $10,000 for using a dangerous weapon during the commission of a crime of violence and twenty-five years for second degree murder, with sentences to run concurrently. Later, when Irons was not present, the trial court corrected her original sentence by vacating the sentence imposed for using a dangerous weapon during the commission of a crime of violence and dismissing that charge. Because the correction of sentence resulted in a reduction of Irons's sentence, Irons was not required to be present under SUPERIOR COURT RULE 124.[3]

■ ■ Having concluded that Rule 124 did not require Irons to be present when the trial court corrected her sentence, we must now determine whether Irons had a constitutional right to be present at that

---

[3] This conclusion is consistent with how other jurisdictions have interpreted similar court rules. *See Henry v. State*, 930 So. 2d 716, 718 (Fla. Dist. Ct. App. 2006) (remanding case to trial court to vacate one of two sentences and "not[ing] that when a trial court strikes a portion of a sentence or otherwise makes some (even non-clerical) correction that benefits the defendant, the defendant's presence is not required."); *State v. Cooley*, 691 N.W.2d 737, 740-41 (Iowa Ct. App. 2004) ("[A] defendant's presence is not required where a [trial] court is correcting an existing sentence, so long as the disposition would not be aided by the defendant's presence and the modification does not make the sentence more onerous."); *State v. Champagne*, 506 So. 2d 1377, 1378-79 (La. Ct. App. 1987) (concluding that defendant's presence was not required when a trial court corrected sentences to run concurrently as agreed upon in plea agreement as opposed to consecutively as originally ordered by the trial court).

hearing. We recognize that a defendant is constitutionally "guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his [or her] presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987). Moreover, the oral pronouncement of sentence in the defendant's presence is a deeply rooted procedural protection. *United States v. Faulks*, 201 F.3d 208, 211 (3d Cir. 2000).

> The rationale for requiring a defendant to be present at sentencing is to ensure that at sentencing — a critical stage of the proceedings against the accused — the defendant has an opportunity to challenge the accuracy of information the sentencing judge may rely on, to argue about its reliability and the weight the information should be given, and to present any evidence in mitigation he may have.

*United States v. Parrish*, 427 F.3d 1345, 1347-48 (11th Cir. 2005) (internal quotation marks omitted). This deeply rooted procedural protection, however, does not extend to proceedings to correct a sentencing mistake that reduces the defendant's punishment. *See Parrish*, 427 F.3d at 1347-48; *Faulks*, 201 F.3d at 211; *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996); *United States v. Moree*, 928 F.2d 654, 655-56 (5th Cir. 1991); *United States v. Christopher*, 700 F.2d 1253, 1262 (9th Cir. 1983). A defendant only has a constitutional right to be present at stages of the trial "where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n.15, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

■ In this case, Irons was present at the initial sentencing and given an opportunity to address the court. *See United States v. Brewer*, 360 Fed. Appx. 28, 29 (11th Cir. 2010) (rejecting defendant's due process and equal protection challenges to be present at hearing to correct sentence because "[n]othing in the record suggest[ed] that [the defendant] did not have the opportunity to challenge his sentencing information and present mitigating evidence at his original sentencing hearing."). She was given the opportunity to challenge the accuracy and reliability of the information the trial court used, to argue the weight the information should be given, and to present mitigating circumstances. The subsequent proceeding was conducted for the limited purpose of correcting Irons's sentence so that it comported with the plea agreement. It was not a "critical stage" of sentencing, as the sentence had already been imposed, nor did her "absence . . . frustrate the fairness of the proceedings." Thus,

her absence from the subsequent hearing did not affect the fairness of the procedure and was not unconstitutional.

## C. Irons's Sentence for Second Degree Murder

Irons also argues that the trial court abused its discretion in sentencing her. Specifically, she claims that the trial court "utilized a uniform policy that marred Irons's sentencing." (Appellant's Br. 18.) Irons bases this argument on the trial court's comment that it was "significant to the Court that Miss Irons entered a plea [to second degree murder and] not to manslaughter that would suggest some kind of extenuating circumstances that would suggest that somehow she was attacked or that she was somehow forced." (J.A. 40-41.) Read in isolation, it is conceivable that the court's statements could, as Irons argues, mean that the court would never exercise discretion in sentencing a defendant convicted of second degree murder unless that defendant was attacked or somehow forced to commit the murder, or, the court's statements could mean that the People charged Irons with murder because the extenuating circumstances that may transform a murder charge into a manslaughter charge were not present. *See United States v. Baker*, 487 F.2d 360, 361 (2d Cir. 1973) (recognizing the impropriety of employing a rigid sentencing policy as opposed to approaching each defendant as an individual, but concluding that the defendant's argument took the sentencing judge's words out of context).

Here, Irons's argument that the trial court possessed and utilized some uniform policy for sentencing defendants convicted of second degree murder which prevented it from exercising its discretion fails because a closer look at the entire sentencing hearing reveals that the Superior Court did in fact exercise discretion in sentencing Irons to twenty-five years imprisonment. To begin, Irons signed a plea agreement in which the People recommended a thirty year sentence — a recommendation the trial court exercised its discretion to reject by sentencing her to only twenty-five years. (J.A. 41; Addendum to J.A. 6-7.) Moreover, before sentencing Irons, the trial court stated that it had "thought long and hard about this sentence. . . . [and] considered the difficult path that Miss Irons had before her growing up, and that at a very young age she endured hardships far beyond those that many of us will ever face in our lives." (J.A. 39.) However, the court also considered Irons's numerous previous contacts with the law, including petty theft, uttering a false check, firing

a missile, failing to appear in court, and violating her probation. (J.A. 39-40.) The court also considered the fact that immediately prior to these charges, Irons was sentenced to a jail term of nine months for violating her probation. (J.A. 40.) Finally, the court noted its "responsibility to impose a sentence commensurate with the offenses that have occurred." (J.A. 42.)

■■ Thus, when reading the sentencing transcript as a whole, it is clear that the Superior Court did not apply a uniform policy in sentencing Irons. To the contrary, the Superior Court considered a number of factors, some in Irons's favor and some against, and in the end, sentenced Irons to less than the People's recommendation and to considerably less than the maximum penalty Irons could have received under Virgin Islands law. *See Gov't of the V.I. v. Martinez*, 42 V.I. 146, 150-51 (D.V.I. 1999) (observing that the Virgin Islands statute prescribing punishment for second degree murder, 14 V.I.C. § 923(b), "sets no maximum penalty for this offense . . . [and] is limited only by the requirement that a definite term of years be specified," and affirming a 75-year sentence). Accordingly, we affirm Irons's sentence of twenty-five years for second degree murder.

### III. CONCLUSION

Neither the rules of the Superior Court nor the United States Constitution require a defendant to be present when a court reduces a sentence previously imposed. Moreover, the trial court did not abuse its discretion in sentencing Irons to twenty-five years imprisonment for second degree murder. Therefore, we affirm the judgment of the Superior Court.