**JERMAINE WILLIAMS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2012-0095
Supreme Court of the Virgin Islands
April 5, 2013

KELE C. ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant*.

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(April 5, 2013)

HODGE, *Chief Justice.* Appellant Jermaine Williams appeals from the Superior Court's July 11, 2012 Amended Judgment and Commitment.[1] For the reasons that follow, we again vacate Williams's sentence and remand this matter for re-sentencing consistent with Virgin Islands law.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

Williams previously appealed to this Court his convictions for second degree murder, first degree assault, third degree assault, and three counts of unauthorized use of a firearm during the commission of a crime of violence, each of which corresponded to the three substantive felonies. *See Williams v. People,* 56 V.I. 821 (V.I. 2012). Although this Court affirmed Williams's convictions on the merits in its June 29, 2012 Opinion, it found that the sentences imposed by the Superior Court violated title 14, section 104 of the Virgin Islands Code; consequently, this Court remanded the matter for re-sentencing. *Id.* at 834 n.9. Even though the time for seeking rehearing had not expired and this Court had not issued its mandate, the Superior Court issued its Amended Judgment on July 11, 2012, which stayed imposition of punishment for first degree assault and third degree assault. The Amended Judgment did not stay any of the three unauthorized use of a firearm convictions.

On September 17, 2012, this Court received a *pro se* notice of appeal from Williams, which stated that he wished to appeal the Amended Judgment. Along with his *pro se* notice of appeal, Williams enclosed a July 13, 2012 letter he received from Paula Norkaitis, Esq. — a lawyer employed by the Office of the Territorial Public Defender who served as

---

[1] Although signed by the trial judge on July 9, 2012, the Clerk of the Superior Court did not enter this document on the docket until July 11, 2012.

his counsel during his prior appeal — in which she informed him that her representation of him was "now finished" and that he "may file a federal habeas corpus petition" if he desired additional review. The following day, this Court issued an order informing the Office of the Territorial Public Defender that "[a]ny attorney appointed to represent a defendant in the Superior Court . . . shall continue to represent that litigant on appeal unless expressly relieved by order of the Superior or Supreme Court," V.I.S.CT.R. 210.3(a), and that — in any event — even an attorney who is ultimately permitted to withdraw may not do so "until . . . a notice of appeal has been filed in the Supreme Court on the litigant's behalf or that the litigant has chosen not to file a notice of appeal despite having been made aware of the right to appeal." *Williams v. People*, S. Ct. Crim. No. 2012-0095, slip op. at 1-2 (V.I. Sept. 18, 2012). Since Attorney Norkaitis attempted to unilaterally withdraw her representation, without court approval, in the prior Williams appeal, this Court also required her to show cause why it should not refer the matter to the Ethics and Grievance Committee of the Virgin Islands ("EGC") for further investigation. *Id.* at 2.

Kele Onyejekwe, Esq., another Territorial Public Defender, filed a notice of appearance on behalf of Williams on September 19, 2012, and on September 21, 2012, filed an amended notice of appeal along with a motion to appoint him as counsel in place of Attorney Norkaitis. On the same day, Attorney Norkaitis filed her response to this Court's September 18, 2012 Order. Ultimately, this Court granted Attorney Onyejekwe's motion, but — without making "any factual or legal determinations with respect to whether Attorney Norkaitis's conduct has violated any applicable ethical rules" — found that probable cause existed to refer Attorney Norkaitis to the EGC. *Williams v. People*, S. Ct. Crim. No. 2012-0095, slip op. at 5 (V.I. Sept. 21, 2012).

On September 28, 2012, Attorney Onyejekwe filed a "motion to reconsider" the September 21, 2012 Order, solely as it pertained to the decision to "sanction" Attorney Norkaitis by referring her to the EGC, and — apparently recognizing that Williams's *pro se* notice of appeal was untimely, *see* V.I.S.CT.R. 5(b)(1) (notice of appeal in criminal case must be filed within 30 days) — filed a motion for leave to file an untimely appeal. This Court, in an October 1, 2012 Order, rejected the "motion to reconsider" because such a motion is not cognizable in the Rules of Appellate Procedure but noted, in any event, that a mere referral to the

EGC did not, in and of itself, constitute a sanction. *See Williams v. People*, S. Ct. Crim. No. 2012-0095, slip op. at 1 (V.I. Oct. 1, 2012); *see also Adkins v. Christie*, 227 Fed. Appx. 804, 806 (11th Cir. 2007) ("A referral cannot be characterized as a sanction" because "[t]hrough a referral, a . . . court simply indicates that in its view, conduct of the attorneys merits further examination by the disciplinary committee, which may or may not result in a sanction."). When the People failed to file an opposition, this Court, in an October 18, 2012 Order, found that the People waived their right to enforce Supreme Court Rule 5(b)(1) — a non-jurisdictional claims-processing rule — and permitted Williams's appeal to proceed. *See Williams v. People*, S. Ct. Crim. No. 2012-0095, slip op. at 1 (V.I. Oct. 18, 2012).

Ultimately, Attorney Onyejekwe filed a brief, ostensibly on behalf of Williams, on November 25, 2012. However, in addition to challenging the merits of the Amended Judgment, the brief also challenges this Court's jurisdiction over and authority to hear Williams's appeal, despite recognizing that adopting this position may harm Williams. Rather than brief this case on the merits, the People joined Attorney Onyejekwe in arguing that this Court should dismiss this appeal for lack of jurisdiction.

## II. DISCUSSION

### A. Appellate Jurisdiction

Title 4, section 32(a) of the Virgin Islands Code gives this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." This Court has stated, in virtually every criminal case that has come before it on appeal, that the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment. *See, e.g., Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012) (citing *Potter v. People*, 56 V.I. 779, 787 (V.I. 2012)); *McIntosh v. People*, S. Ct. Crim. No. 2008-0060, 2012 V.I. Supreme LEXIS 86, *5 (V.I. Nov. 29, 2012) (citing *Browne v. People*, 56 V.I. 207, 216 (V.I. 2012) and *Melendez v. People*, 56 V.I. 244, 251 (V.I. 2012)). Based on these authorities, it would appear beyond question that this Court possesses jurisdiction over Williams's appeal of the Amended Judgment.

Nevertheless, Attorney Onyejekwe[2] — despite representing Williams in this matter[3] — argues that this Court lacks jurisdiction over this appeal.

Attorney Onyejekwe's position — which the People have fully adopted without citing to any additional legal authority[4] — is wholly without merit. In a section titled "Statement of Appellate Jurisdiction," Attorney Onyejekwe makes the following claim:

> The appellate jurisdiction of this Court is in serious doubt. This matter is not here out of conviction, but this "appeal" is one way for the court to visit the subject of whether it has jurisdiction to entertain an appeal where the trial court's judgment of sentence is stayed. This court must have overlooked the rule of the Virgin Islands Code and of the common law that when a matter is stayed, there is no appellate jurisdiction. This is true even if one sentence out of many is implicated. The Superior Court's Amended Judgment [a]nd Commitment of July [11], 2012, carries a stay Order. (J.A. at 18.) Therefore, the OTPD takes the opportunity to brief the issue in light of this Court's historic decision in *People v. Williams* [sic] of June 29, 2012.

(Appellant's Br. 5.) Later, within a subsection titled "This Court lacks jurisdiction because there is not [sic] final order," Attorney Onyejekwe sets

---

[2] Since Attorney Onyejekwe appears to acknowledge in his appellate brief that Williams's interests are not furthered by challenging this Court's jurisdiction or our "authority" to hear this appeal, we decline to impute these arguments to Williams himself. Moreover, for the same reasons previously given when this Court prohibited court-appointed counsel from filing *Anders* briefs, *Murrell v. People*, 53 V.I. 534, 547-48 (V.I. 2010), we would ordinarily decline to address these and any other issues in which a court-appointed attorney appears to knowingly advocate for a result directly contrary to his client's interests. Nevertheless, since the People have chosen to adopt Attorney Onyejekwe's arguments, we address them on the merits.

[3] Given that Attorney Onyejekwe represents Williams in this matter — and, in fact, filed a motion to represent him in lieu of Attorney Norkaitis — this Court has serious concerns about his decision to challenge this Court's jurisdiction over his own client's appeal, particularly since Attorney Onyejekwe acknowledges in his brief that, were this Court to agree with him, Williams would forever lose his right to a direct appeal and could only vindicate his rights through a habeas corpus action. (Appellant's Br. 30.)

[4] Because we do not impute Attorney Onyejekwe's jurisdictional argument to Williams, we decline to treat the statements in the parties' briefs as a stipulation to the dismissal of this appeal. And in any case, such a stipulation would not be effective if the reason given is the absence of jurisdiction, since it is well established that parties may not stipulate to either the presence or absence of subject matter jurisdiction. *See H&H Avionics, Inc. v. V.I. Port Auth.*, 52 V.I. 458, 460 (V.I. 2009).

forth the following argument, which is only one paragraph long and reads, in its entirety, as follows:

> Because a stayed order is not a final order, this court lacks jurisdiction. It is true that every sentence is not stayed. Nevertheless, this Court has stated numerous times that piece-meal litigation is not allowed. *See, e.g., Bryant v. People*, 53 V.I. 395, 400 (V.I. 2010) ("the final judgment rule, which generally requires a party 'to raise all claims of error in a single appeal following final judgment on the merits.' ") (*quoting Enrietto v. Rogers Townsend & Thomas PC*, 49 V.I. 311, 315 (V.I. 2007)). Hence one stay *stays* all. Accordingly, this Court lacks jurisdiction in this particular case. In fact, Williams's remedy — if this Court does not correct *Williams* — *may* be a habeas corpus petition.

(Appellant's Br. 29-30.)

██ ██ Unquestionably, this Court's precedents establish that the July 11, 2012 Amended Judgment is an appealable final order, since it contains an adjudication of guilt on all charges along with a corresponding sentence for each offense. This view is in accord with the conclusions reached in other jurisdictions. *See, e.g., Peterson v. Jacobson*, 2 Ariz. App. 593, 411 P.2d 31, 32 n.1 (1966) (right to appeal arises from final judgment, and in a criminal case, "imposition of sentence is required for finality and concomitantly for appealability of a judgment of conviction") (citing 4 AM.JUR.2D *Appeal and Error* § 161; *Parr v. United States*, 351 U.S. 513, 76 S. Ct. 912, 100 L. Ed. 1377 (1956); *Whitney v. Commonwealth*, 337 Mass. 722, 151 N.E.2d 272, 273 (1958); *Birnbaum v. United States*, 107 F.2d 885, 887 (4th Cir. 1939)). Moreover, Attorney Onyejekwe has failed to cite to any legal authority whatsoever that this Court lacks jurisdiction to review a judgment in a criminal case where the Superior Court has complied with section 104 of title 14 by staying execution of the sentence for one or more counts. On the contrary, courts have repeatedly held, in both the criminal and civil contexts, that a trial court's decision to stay the execution of all or part of a judgment has absolutely no effect on the judgment's appealability. *See, e.g., Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189, 61 S. Ct. 513, 85 L. Ed. 725 (1941) ("[T]he general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not — until and unless reversed — detract from its

decisiveness and finality."); *State v. Carlisle*, 131 Ohio St. 3d 127, 2011 Ohio 6553, 961 N.E.2d 671, 673 (2011) (rejecting argument that a criminal judgment is not final until it is actually executed); *State v. Lindquist*, 254 Minn. 28, 93 N.W.2d 521, 523 (1958) ("The sentence in a criminal case is the judgment from which the appeal must be taken within the time provided by law. The stay of execution of sentence does not in any manner affect the finality of the judgment."); RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. f ("[F]inality is not affected by . . . a stay or supersedeas of the judgment appealed from that prevents its execution or enforcement."). To hold otherwise would lead to numerous absurd results,[5] and require violating several canons of statutory construction.[6] Therefore, we hold that we possess appellate jurisdiction over this appeal.

## B. This Court's Authority to Hear this Appeal

▮▮▮▮ Attorney Onyejekwe also contends that this Court "cannot hear" this case due to its earlier decision to refer Attorney Norkaitis to the EGC for a further investigation into her representation of Williams, including her failure to timely file a notice of appeal. Unfortunately, it is difficult to determine what precise argument Attorney Onyejekwe intends to raise. While the brief mentions recusal a single time in a fleeting manner, (Appellant's Br. 30), jurisdictional language — such as "cannot hear" — is repeatedly used, and, in fact, the issue is first raised in the statement of appellate jurisdiction. (Appellant's Br. 5.) To the extent Attorney Onyejekwe believes that this Court[7] lacks jurisdiction or otherwise cannot hear this appeal simply because it referred Attorney Norkaitis to the EGC — which, according to Attorney Onyejekwe, potentially created a conflict

---

[5] For example, under Attorney Onyejekwe's interpretation of finality, Williams would have been unable to obtain any appellate review of his murder conviction if the Superior Court had complied with section 104 in the first place.

[6] For instance, in order to reach the conclusion that this Court lacks jurisdiction over the Amended Judgment, this Court would have to presume that the Legislature was either not aware of section 104 of title 14 when it enacted section 32(a) of title 4, or that — notwithstanding its clear intent to have a local appellate court review judgments entered in local criminal cases — it intended for the Superior Court and the District Court to review, by way of habeas corpus, the vast majority of criminal convictions.

[7] The Supreme Court of the Virgin Islands is not the same entity as the Chief Justice and two Associate Justices that compose it. *See In re Kendall*, 53 V.I. 459, 468 (V.I. 2010).

of interest — the argument is wholly without merit, since the EGC is itself a creation and extension of this Court. *In re Rogers*, 56 V.I. 618, 623-24 (V.I. 2012). And in any case, the Legislature has established a mechanism for this Court to hear an appeal, even if multiple justices recuse themselves or are otherwise unable to participate. 4 V.I.C. § 24(a).

██ To the extent Attorney Onyejekwe merely desires that all three Justices of this Court recuse themselves, he has made his request in such a fleeting and cursory manner that would ordinarily render it waived. *See Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 569 (V.I. 2012); V.I.S.CT.R. 22(m) ("Issues that . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority[] are deemed waived for purposes of appeal."). However, it appears that the entire premise for Attorney Onyejekwe's request is that "this Court is a party — formally called grievant — according to Rule 207.1.2(a)(3)," in the EGC proceeding. (Appellant's Br. 30.) But as this Court has previously held, the Office of Disciplinary Counsel may investigate, and prosecute, an allegation that an attorney has engaged in professional misconduct "even if the matter was not brought to its attention by a 'grievant.'" *In re Doe*, S.Ct. Civ. No. 2012-0134, 2013 V.I. Supreme LEXIS 3, *5 (V.I. Jan. 10, 2013). Although Supreme Court Rule 207.1.2 provides a "grievant" may be "[a]ny judge or any lawyer, pursuant to Rule 8.3 of the Model Rules of Professional Conduct," the September 21, 2012 Order stated that Attorney Norkaitis was referred to the EGC because there was "probable cause" that she may have committed misconduct, whereas the Model Rules of Professional Conduct mandate a referral if one "knows that another lawyer has committed a violation of the Rules of Professional Conduct." MODEL R. PROF'L COND. 8.3(a). It should go without saying that a finding by this Court that *probable cause* exists to warrant further investigation is not the same as a finding that the Court "*knows* that [Attorney Norkaitis] *has committed* a violation of the Rules of Professional Conduct," (emphasis added), particularly when the September 21, 2012 Order explicitly stated that it was not making "any factual or legal determinations with respect to whether Attorney Norkaitis's conduct has violated any applicable ethical rules." Thus, this Court did not refer Attorney Norkaitis to the EGC pursuant to Model Rule 8.3, but pursuant to Supreme Court Rule 203(f)(1), which provides that "[w]hen misconduct or allegations of misconduct which, *if substantiated*, would warrant discipline on the part of an attorney admitted to practice

before this court shall come to the attention of a [justice] of this court, whether by complaint or otherwise . . . the [justice] shall refer the matter to the [EGC] for investigation and the prosecution of a formal disciplinary proceeding. . . ." V.I.S.Ct.R. 203(f)(1) (emphasis added). In fact, the EGC has not proceeded as if any justice of this Court is a "grievant" with respect to Attorney Norkaitis's disciplinary proceeding, and has not sent any justice any of the notices that it is required to send to a "grievant" pursuant to Supreme Court Rule 207 — in fact, this Court does not even know if the disciplinary proceeding against Attorney Norkaitis remains pending, or if it has been resolved. Accordingly, none of the justices of this Court are "grievants" in the EGC proceeding.

### C. Standard of Review

Generally, this Court exercises plenary review when a criminal defendant challenges the Superior Court's sentencing decision based solely on application of legal precepts. *Cheatham v. People*, S. Ct. Crim. No. 2008-0026, 2009 V.I. Supreme LEXIS 22, *4 (V.I. Mar. 27, 2009) (quoting *Warner v. Gov't of the V.I.*, 332 F. Supp. 2d 808, 810, 46 V.I. 251 (D.V.I. App. Div. 2004)) (unpublished). However, when a criminal defendant fails to object to a Superior Court decision or order — as was the case here with respect to every issue raised on appeal — this Court ordinarily only reviews for plain error. *See* V.I.S.Ct.R. 4(h); *see also Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). For this Court to reverse the Superior Court under the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). However, even "[i]f all three conditions are met," this Court may reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 390-91.

██ Nevertheless, in this case, Williams had no opportunity to raise any objection before the Superior Court. As noted above, the Superior Court in this case acted precipitously, issuing the Amended Judgment without providing any of the parties with prior notice that it would do so. In fact, the Superior Court issued the Amended Judgment before the time for any party to seek rehearing even expired — let alone before this Court issued its mandate, the formal document which divests this Court of

jurisdiction and vests it back in the Superior Court.[8] While Williams could have potentially brought these issues to the Superior Court's attention by filing a motion for reduction of sentence, this Court has never required that a litigant take such an action to preserve an issue on appeal. Therefore, we exercise plenary review over the issues that Williams raised in his brief, and review for plain error the single issue of whether the Amended Judgment is consistent with our earlier June 29, 2012 Opinion.

## D. The Amended Judgment

In his appellate brief, Williams challenges the Amended Judgment on numerous grounds. For the reasons that follow, we reject these claims, but ultimately vacate the Amended Judgment because the Superior Court failed to comply with our June 29, 2012 Opinion when it re-sentenced Williams.

### 1. Challenge to Prior *Williams* Opinion

First, Williams sets forth a lengthy argument challenging several aspects of this Court's prior decision, including, but not necessarily limited, to (1) contending that section 2253 of title 14 is void; (2) arguing that section 3 of the Revised Organic Act confers greater protections than the Double Jeopardy Clause of the Fifth Amendment; and (3) claiming that the rule of lenity requires us to hold that section 2253 is void. We question whether these issues are properly before the Court, since, as Williams recognizes, all of these issues could have been — but were not — raised in the prior appeal in this case. *See United States v. Matthews*, 643 F.3d 9, 13 (1st Cir. 2011) (the law of the case doctrine "binds a successor appellate panel in a second appeal in the same case to honor fully the original decision"); *Gov't of the V.I. v. AT & T of the V.I., Inc.*,

---

[8] While the Superior Court technically lacked jurisdiction to issue the Amended Judgment, "[t]he rule against trial court action affecting matters on appeal is grounded not in metaphysical notions regarding transfer of power, but on practical considerations concerning efficient judicial administration." *Harvey v. Christopher*, 55 V.I. 565, 569 n.2 (V.I. 2011) (quoting *Stebbins v. Stebbins*, 673 A.2d 184, 189-90 (D.C. 1996)). While the "better practice" would have been for the Superior Court to wait until all proceedings on appeal had formally concluded, vacating the Amended Judgment on this basis would "serve no purpose other than additional delay and expense," since there is absolutely no indication that, on remand, the Superior Court would reach a different result. *Id.* Accordingly, this Court will "overlook[] the Superior Court's technical error." *Id.*

51 V.I. 731, 737 (D.V.I. App. Div. 2009) (applying law of the case in second appeal of issue addressed in prior appeal to the Appellate Division); *Kortum v. Johnson*, 2010 ND 153, 786 N.W.2d 702, 705 (2010) ("A party cannot on a second appeal relitigate issues . . . which would have been resolved had they been properly presented in the first appeal."). But in any event, this Court has recently fully addressed — and rejected — these identical arguments on the merits, *see Ward v. People*, S. Ct. Crim. No. 2012-0077, 2013 V.I. Supreme LEXIS 9, *6-7 (V.I. Mar. 6, 2013), and Williams has provided us with no grounds to cause us to revisit our decision.

## 2. *Physical Presence at Re-Sentencing*

Williams also argues that the Superior Court impermissibly "sentenced [him] by mail" when it issued the Amended Judgment without conducting a sentencing hearing. (Appellant's Br. 28.) Relying exclusively on a single federal case, Williams argues that the United States Constitution, the Revised Organic Act, the Federal Rules of Criminal Procedure, and Superior Court Rule 124 all required his physical presence at re-sentencing. (Appellant's Br. 29.) However, in a decision issued about two months before Williams filed his brief, this Court rejected — with ample discussion of federal and local case law and authorities — this very same argument, *see Irons v. People*, 57 V.I. 473, 478-479 (V.I. 2012), and Williams does not even cite to this decision, let alone attempt to explain why this Court should overturn or depart from such a recent precedent. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 985 & n.10 (V.I. 2011) (discussing *stare decisis*). In the absence of any attempt at reasoned argument, we decline to revisit *Irons* as part of this appeal.[9]

---

[9] We recognize that, in *Irons*, the Superior Court *sua sponte* reduced a defendant's sentence shortly after the defendant left the courtroom, whereas in this case the re-sentencing was ordered by this Court. However, as in *Irons*, the re-sentencing in this case "was not a 'critical stage' of sentencing, as the sentence had already been imposed," 57 V.I. at 479, with this Court simply instructing that the Superior Court correctly apply section 104 of title 4 to stay execution of some of those sentences. Had this Court vested the Superior Court with the plenary authority to revisit Williams's sentence on remand, it may very well have been the case that Williams's physical presence may have been required. *See, e.g., United States v. Parrish*, 427 F.3d 1345, 1347-48 (11th Cir. 2005) (holding no right for defendant to be physically present at re-sentencing when appellate court's remand did not authorize the trial judge to modify the original sentence).

### 3. Speedy Trial

██ Williams also argues that the Amended Judgment violates his right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, made applicable to the Virgin Islands through section 3 of the Revised Organic Act of 1954, because "a speedy trial concludes with a sentence," which is "impossible with a perpetually *stayed* sentence." (Appellant's Br. 26 (emphasis in original).) Although this claim is partially based on Attorney Onyejekwe's erroneous belief that a stay of execution affects a judgment's finality, Williams also relies on a single case — *People v. Karaman*, 4 Cal. 4th 335, 14 Cal. Rptr. 2d 801, 842 P.2d 100 (1992) — to support his broad proposition. However, *Karaman* is wholly inapposite; it does not address the Sixth Amendment, but simply states, under California statutory law, that a judge possesses the authority to reduce a sentence after it is announced, but before it goes into effect. Importantly, Williams fails to explain how vesting a judge with the perpetual power to *reduce* — as opposed to increase — his sentences prior to their execution would in any way violate the Sixth Amendment. *See Francis*, 52 V.I. at 393 (recognizing that "an error that favors the defendant is 'a species of harmless error . . . of which he cannot complain.' ") (quoting *People v. Pierce*, 56 Ill. 2d 361, 308 N.E.2d 577, 579 (Ill. 1974)).

██ ██ However, Virgin Islands law is not like California law; the Superior Court's authority to reduce a sentence after it is announced is constrained by Superior Court Rule 136, which provides, in relevant part, that "[t]he court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after any order or other mandate issued upon affirmance of the judgment or dismissal of the appeal, received by the court has become final by reason of the expiration of the time limited for further appeal or review." A sentence is "imposed" not when it is executed; imposition of a sentence occurs upon final adjudication of guilt, not when incarceration actually begins.[10] *See, e.g., United States v. Arnold*, 213 F.3d 894, 895-96 (5th Cir. 2000); *State v. Clark*, 151 N.H. 56,

---

[10] Unfortunately, we recognize that our original *Williams* opinion may have added to the confusion by directing the Superior Court to "stay the *imposition* of punishment for the remaining two crimes." 56 V.I. at 834 n.9 (emphasis added). However, notwithstanding our imprecise language, it is clear from the context of the prior *Williams* decision, as well as our subsequent decisions interpreting section 104, that section 104 requires the Superior Court

849 A.2d 143, 144 (2004) (agreeing that "a sentence is imposed when pronounced by the court and executed when it is carried into effect"); *Bojorquez v. State*, 135 Idaho 758, 24 P.3d 706, 709 (Idaho Ct. App. 2000) ("Idaho appellate courts have long adhered to the principle that a sentence is imposed when initially pronounced even if its execution is later postponed . . . .") (collecting cases). Since the Superior Court lacks plenary authority to revisit, at any time, the sentences for the counts where execution of punishment has been stayed, Williams's concern is wholly unfounded.

### 4. Non-Compliance with June 29, 2012 Opinion

As explained above, none of the issues identified in Williams's brief warrant reversal of the Amended Judgment. Nevertheless, while not raised as an issue on appeal,[11] we cannot ignore that, on remand, the Superior Court failed to comply with the June 29, 2012 Opinion, which explicitly required it to do the following:

> [O]n remand, the Superior Court is directed to impose punishment for one of the crimes of which Williams was found guilty — second degree murder, first degree assault, or third degree assault — and stay the imposition of punishment for the remaining two crimes.
>
> On remand, the Superior Court should also impose punishment for one of the unauthorized use of a firearm during the commission of a crime of violence violations for which Williams was found guilty and stay the imposition of punishment for the remaining two.

*Williams*, 56 V.I. at 834 n.9. Notwithstanding these instructions, the Amended Judgment only stays execution of the sentences for the first-degree assault and third-degree assault counts; it does not stay any of the unauthorized use of a firearm convictions.

Since Williams could have — but did not — raise this issue in his appellate brief, we review only for plain error. However, all four prongs of the plain error test are easily met. The June 29, 2012 Opinion clearly

---

to announce a sentence for all offenses and to subsequently stay execution of the sentences in which section 104 is implicated.

[11] *See* V.I.S.CT.R. 22(m) (providing that "the Supreme Court, at its option, may notice an error not presented [by the litigants] that affects substantial rights").

and unambiguously required the Superior Court to stay execution of two of the three firearm convictions. And since the Superior Court's failure to apply section 104 to these convictions in the first place affected Williams's substantial rights and the public reputation of judicial proceedings, it should go without saying that ignoring the portion of the June 29, 2012 Opinion requiring full compliance with section 104 also satisfies those factors. Therefore, we vacate the Amended Judgment and, for a second time, direct the Superior Court to stay execution of punishment for two of the three firearm convictions in accordance with section 104.

## III. CONCLUSION

For the foregoing reasons, we vacate the Amended Judgment and remand this matter for re-sentencing because the Superior Court failed to comply with this Court's June 29, 2012 Opinion.